HIGHTOWER, Judge.
Pursuant to a judgment rendered and signed on December 14, 1988, appellant, A.C., was judicially committed for the treatment of mental illness at Central Louisiana State Hospital at Pineville. He now presents two specifications of error for review. It is first contended that the evidence adduced at the commitment hearing failed to satisfy the required burden of proof. Second, it is asserted that his commitment was not to the least restrictive of those suitable facilities available, as required by LSA-R.S. 28:55 E. Finding the first argument to be persuasive, we reverse without reaching the second contention.
I.
On November 21, 1988, appellant’s family requested police assistance in taking him to the LSU Medical Center (LSUMC) in Shreveport. He was involuntarily admitted to that facility by a physician’s emergency certificate. The coroner then conducted an independent examination and also executed an emergency certificate which permitted continued confinement for a period not to exceed fifteen days. LSA-R.S. 28:53 A(l).
On December 6, 1988, the LSU Medical Center filed a petition seeking commitment. An attorney with the Mental Health Advocacy Service was appointed to represent appellant. Also, Dr. C. Simon Sebastian, appellant’s attending physician at LSUMC, was appointed to conduct an examination and compile a written report.
At the hearing, the content of the coroner’s certificate was found to be hearsay and inadmissible for the truth thereof. Indeed, Dr. Sebastian was the only witness called. At the close of petitioner’s case, appellant made a motion for a directed verdict, which was denied. Appellant then chose to present no evidence in his own behalf.
. II.
Through oral argument and a subsequent joint stipulation filed into the record, it has been disclosed that appellant during the pendency of this appeal was conditionally discharged from Central Louisiana State Hospital pursuant to LSA-R.S. 28:56(G). The stipulation reveals the conditions of discharge to be that he attend scheduled appointments at a mental health center and continue prescribed medication.
A moot case is one which seeks a judgment or decree which, when rendered, can give no practical relief. Robin v. Concerned Citizens, St. Bernard, Inc., 384 So.2d 405 (La.1980); Paddie v. Stewart, 471 So.2d 898 (La.App. 2d Cir.1985). Appellant now enjoys his liberty again, but according to the stipulation only at the expense of adherence to certain terms and conditions. A reversal, the decree sought here, would dissolve such requirements and have a practical legal effect. Thus, in view of the stipulation we will on this occasion approach the case as not being moot.
*135 III.
Before one may be subjected to a judgment of civil commitment, the petitioner must show by clear and convincing proof that the respondent is dangerous to himself or to others or is gravely disabled, as a result of substance abuse or mental illness. LSA-R.S. 28:55(E); Matter of Scott, 438 So.2d 728 (La.App. 2d Cir.1983). Thus, the evidence at a commitment proceeding must establish at least one of the three statutory justifications for institutionalization. Along with the statute, federal constitutional guarantees also mandate an enhanced level of proof. See Addington v. Texas, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979).
In the present case, the trial court’s judgment specifically reflects its opinion that appellant was gravely disabled. Consequently, we first consider whether the evidence clearly and convincingly shows appellant to be “gravely disabled” within the meaning provided by statute.
A “gravely disabled” person is one “who is unable to provide for his own basic physical needs, such as essential food, clothing, medical care and shelter, as a result of serious mental illness or substance abuse and is unable to survive safely in freedom or protect himself from serious harm.” LSA-R.S. 28:2(10). (Emphasis added). The statutory definition, then, reveals that two distinct requirements must both be satisfied before one may be said to suffer from a grave disability.
On direct examination, Dr. Sebastian stated that appellant suffered from bipolar disorder, manic with psychotic features. The problem was being treated with lithium carbonate, Navane, and Ativan, the combined dosage of which was fairly high, but no dramatic changes had been produced. Grandiose and euphoric traits were observed. Also, appellant displayed religious preoccupations, including delusions concerning healing powers and conversations with angels, and the doctor noted that his insight and judgment were impaired. Finally, Dr. Sebastian opined, “He is gravely disabled in that judgment is impaired and I believe that at this time he might not be able to provide for himself.”
However, during cross-examination concerning A.C.’s ability to provide for his own care, Dr. Sebastian acknowledged that appellant received a substantial amount of disability income. Moreover, when asked if appellant had a place to live, the doctor conceded that before his confinement he was living in Plain Dealing near his children. Appellant’s counsel also asked whether his client had been eating the necessary food and wearing the appropriate clothing. Dr. Sebastian’s only response was to the effect that the report of poor hygiene on the coroner’s certificate and the family’s concern in seeking police assistance caused “some question” as to the appropriateness of appellant’s behavior. When further queried about whether appellant’s self-care created any serious or life threatening problem, the doctor replied, “Well, it is hard to say at this time.” It was established that appellant, by and large, attended to his own physical needs in the hospital.
Dr. Sebastian’s limited and somewhat undeveloped testimony, standing alone and undermined by cross-examination, does not clearly and convincingly show an inability of appellant to provide for his physical needs, let alone an inability to survive safe from serious harm. Thus, in that petitioner failed to prove that appellant was “gravely disabled,” the trial court erred. Even though the lower court’s findings are entitled to great weight, an appellate court must, considering the constitutional rights involved, review the evidence presented and strictly require that it meet the high standards enunciated by law. See Matter of L.M.S., 476 So.2d 934, 936 (La.App. 2d Cir.1985).
In defining another of the statutory causes for confinement, LSA-R.S. 28:2(4) states, “ ‘Dangerous to self’ means the condition of a person whose behavior, significant threats or inaction supports a reasonable expectation that there is a substantial risk that he will inflict physical or severe emotional harm upon his own person.” As previously discussed, Dr. Sebastian could *136 not state that appellant’s self-care was deficient in any especially significant way. The testimony is otherwise devoid of any indications that appellant physically or emotionally harmed himself. So, the evidence does not permit a finding of “dangerous to self.”
The final statutorily permitted basis for commitment is “dangerous to others.” Such a condition exists when a person’s “behavior or significant threats support a reasonable expectation that there is a substantial risk that he will inflict physical harm upon the person of another in the near future.” LSA-R.S. 28:2(3). Dr. Sebastian testified that appellant’s condition, in general, indicated a high probability of aggressive responses. Some type of altercation with another patient had been reported; however, A.C. contended the other patient was the aggressor. Considering the diagnosis, as well as appellant’s seemingly poor judgment, along with the coroner’s certificate — notwithstanding that the certificate was not admitted for the truth of its contents — Dr. Sebastian stated, “I feel that if he were to not be in the hospital, it is conceivable that he might, indeed, become dangerous to others.” (Emphasis added).
On the other hand, Dr. Sebastian acknowledged that to his knowledge, A.C. had been essentially non-assaultive except for the one previously mentioned altercation of uncertain inception. In that connection, he agreed that appellant’s claim of self-defense could very well be correct. He also indicated that the coroner’s report described no assaultive behavior. In addition, appellant had made no threats to harm others. When served with the commitment proceeding, he was quite agitated and supposedly said that “something” would happen, but Dr. Sebastian regarded that as not being a “concrete threat.” In fact, at one point the doctor flatly declared, “The question of dangerousness is difficult to judge.”
The record reveals, then, the doctor’s diagnosis and his opinion that appellant’s malady could cause aggressive behavior. However, no solid, undisputed, and competent evidence appears from A.C.’s words or action to provide clear and convincing proof of dangerousness to others. Dr. Sebastian’s opinion that it is “conceivable” that appellant “might” become dangerous, unsupported by competent evidence, is not the clear and convincing showing required by this statute, a statute by which one can be deprived of his liberties.
IV.
The record contains references to appellant’s alleged anti-social exhibitions in the hospital. However, no personnel, such as nurses or orderlies, with firsthand knowledge of appellant’s day-to-day behavior were called to testify. Likewise, no friends or family members were asked to relate any symptoms of mental illness which appellant may have displayed prior to his institutionalization.
Since the evidence fails to satisfy the pertinent statutory grounds for commitment, appellant’s claim of insufficient evidence is meritorious. Inasmuch as our decision terminates, rather than maintains, the commitment, we need not determine whether Central Louisiana State Hospital was the most appropriate, yet least restrictive, facility for treatment.
CONCLUSION
For the foregoing reasons, the judgment of commitment is reversed.
REVERSED.
SEXTON, J., concurs with written reasons.