552 So.2d 528 (1989)
In the Matter of M.M.
No. 21357-CA.
Court of Appeal of Louisiana, Second Circuit.
November 1, 1989.
Mental Health Advocacy Service by E. Paul Young, Shreveport, for appellant.
Edward Dixon, Shreveport, for appellee.
Before MARVIN, FRED W. JONES, Jr., and NORRIS, JJ.
MARVIN, Judge.
In this appeal of a judgment committing M.M., a 60-year-old female, to a state mental institution under LRS 28:55E, 28:2(10), we find that the evidence does not meet the statutory requirement of clear and convincing proof that M.M. is "gravely disabled," which by statutory definition contains two elements.
We reverse the judgment and order appellant discharged from confinement.

ELEMENTS AND BURDEN OF PROOF
To allow the conclusion that M.M. is "gravely disabled," the statute requires that the petitioning hospital, LSU Medical Center in Shreveport, prove by clear and convincing evidence that M.M. was unable to provide for her own basic physical needs, such as essential food, clothing, medical care and shelter, as a result of serious mental illness and that she was unable to survive safely in freedom or protect herself from serious harm. LRS 28:55E, 28:2(10).
*529 Without seriously disputing its failure to prove the first element of the definition [that M.M. was unable to provide for her own basic needs], the hospital contends that we should conclude that proof of either of the two elements is sufficient. The statute defining "gravely disabled," § 28:2(10), clearly requires proof of both elements and can be given effect as written without rendering its meaning ambiguous or absurd. In these circumstances we are not at liberty to read the word "and" in the statute to mean "or." See LRS 1:4; Hebbler v. New Orleans Fire Department, 310 So.2d 113 (La.1975); and State v. Bergeron, 235 La. 879, 106 So.2d 295 (1958).
Because a person is deprived of liberty by involuntary commitment, the evidence must be reviewed for strict adherence to the high standard of proof required by constitutional and statutory law, notwithstanding the great weight that appellate courts give to the trial court's factual findings. Addington v. Texas, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979); State v. A.C., 543 So.2d 133 (La.App.2d Cir.1989).

EVIDENCE
The court-appointed physician, Dr. John Straumanis, examined M.M. for about 15 minutes on June 19, 1989. He had seen her for shorter periods of time at least twice a week since June 6, following her admission to the hospital on May 31. On each occasion M.M. was found to be somewhat hyperactive, with an inappropriate affect fluctuating from irritability to inappropriate laughter. He described her thinking as "quite disorganized and loose" and said "she seems to be hallucinating and seems to have delusional ideas although this was difficult to document because of her remarkable thinking disturbance."
These findings are listed in Dr. Straumanis's medical report as "objective factors leading to the conclusion that respondent has a mental illness." The next section of the report asks the doctor to identify "actions or statements by respondent leading to the conclusion that respondent is ... dangerous to self; dangerous to others; [or] gravely disabled," the statutory grounds for commitment under § 28:55E. Dr. Straumanis there reported his diagnosis of "chronic undifferentiated schizophrenia," his drug treatment recommendations, and his conclusions that "Patient is gravely disabled and possibly dangerous to herself. The dangerous to self would not be intentional but due to her gross behavior, disorganization and poor judgment[.]"
At the hearing, Dr. Straumanis testified:
I haven't seen anything that would indicate that she is suicidal. It's in terms of that she just cannot take care of herself.... [I]f she ... starts approaching people mumbling something, giggling, laughing or getting a little bit irritable, let's say at 7-Eleven or Circle K or whatever; it's very easily [sic] that somebody is going to take advantage of her, if not physically, you know, assault her.
A person may be committed as "dangerous to self" if his "behavior, significant threats or inaction supports a reasonable expectation that there is a substantial risk that he will inflict physical or severe emotional harm upon his own person." § 28:2(4), with our emphasis.
The type of "indirect danger to self" that Dr. Straumanis described, arising from the risk that others might "easily" take advantage of M.M. because of her disorganized thinking and inappropriate expression of emotion, is not within the statutory definition of "dangerous to self," although such conduct could be relevant to determine whether M.M. is unable to survive safely in freedom or protect herself from serious harm, the second element of the definition of "gravely disabled" in § 28:2(10).
Dr. Straumanis admitted that he had no personal knowledge of any instances where someone tried to take advantage of M.M. Dr. Straumanis's opinion that this "could" or "might" happen was based solely on his brief and infrequent contact with M.M. No one who had observed M.M.'s behavior in or out of the hospital reported or testified to this happening to M.M. We must find that Dr. Straumanis's opinion in *530 this respect does not satisfy the statutory burden of proof. State v. A.C., supra.
Dr. Straumanis acknowledged that while M.M. was in the hospital, she recognized her need for food, she went to get her food at mealtime, and she did not have to be prompted to eat or be fed by someone else, as some patients did. His opinion that M.M. could not go out and get food if she were not in the hospital was based solely on his finding that her thinking was disorganized, and not on any knowledge or information about her past ability to handle her basic physical needs outside the hospital.
M.M. testified that she lived in her own house in Shreveport, sometimes alone and sometimes with family members who stayed with her when they were out of work. She said she receives about $400 per month in social security benefits and explained how she spends the money:
When you receive your check, what do you do with it?
Well, first I pay my house note.
Okay. Then what do you do?
My utilities
All right.
if we have enough food.
Okay.
But if we don't have enough food, I go downI'll keep some on handand oil. And I go down and buy it on sale.
Okay. How do you get your food? Do you do your own shopping?
Yes, sir. It depends on who's in my house and what you need for them.
Okay. How close is the grocery store to your house?
Well, the one that's closest, I only buy sales things there unless I really have to have something and my car isn't running.
In 12 pages of testimony M.M. gives some unresponsive and confusing answers. To most questions, however, she answers clearly, coherently, and in complete sentences. This record contradicts Dr. Straumanis's conclusion that "any meaningful conversation [with her] is basically impossible." This quoted statement is also the basis for Dr. Straumanis's conclusion that M.M. could not take care of herself. M.M.'s testimony does not support these conclusions.
Dr. Straumanis's report contains hearsay accounts of the behavior that led to M.M.'s confinement in the hospital on May 31, 1989, and on another occasion about a month earlier. The hearsay in the report, objected to by M.M.'s counsel, was admitted, not to prove the truth of the assertions, but only to show the medical history that Dr. Straumanis used for his diagnosis and treatment.
In its brief, the hospital refers to hearsay accounts of M.M.'s behavior contained in the coroner's emergency certificate of June 1, 1989. This certificate and the physician's emergency certificate issued the day before are attached to the hospital's petition but were not offered or admitted as evidence at the hearing. The certificates cannot be considered as "evidence" in deciding or reviewing the merits of the case. Bowman v. Weill Const. Co., 502 So.2d 133 (La.App.3d Cir.1987), writ denied.
Dr. Straumanis's opinion of M.M.'s inability to care for herself was contradicted and undermined by M.M.'s testimony, which was not rebutted by competent evidence from anyone with personal knowledge of how she has satisfied her need for food, clothing, shelter and medical care in the past. Under these circumstances, the doctor's testimony is insufficient to satisfy the hospital's high burden of proof. See and compare State v. A.C., supra, and Matter of Commitment of VA, 463 So.2d 998 (La.App.3d Cir.1985).

CONCLUSION
The hospital proved only that M.M. is mentally ill. It did not prove clearly and convincingly that she is unable to provide for her own basic physical needs as a result of her illness and that she is unable to survive safely in freedom or protect herself from serious harm, the statutory requirements for a finding that she was gravely disabled. There is no evidence in the record indicating that she was dangerous to herself or dangerous to others.

*531 DECREE
Costs allowable by law are assessed against the appellee. The judgment of commitment is reversed and M.M. is ordered discharged from confinement.