GUIDRY, Judge.
This is an appeal by respondent, J.M., of the order of the trial court judicially committing him to the Veterans Affairs System for treatment of mental illness.
J.M. alleges that the trial court erred in scheduling his hearing beyond the eighteen day limit of La.R.S. 28:54(C) and in relying on hearsay testimony to find that the Administrator of the Department of Veterans Affairs Medical Center (hereafter petitioner) proved, by the degree necessary, that respondent met the criteria for judicial commitment. J.M. also urges that the court erred in not considering a less restrictive alternative to commitment.
*101 On August 10, 1989, J.M. was picked up pursuant to an order of protective custody and hospitalized at the Department of Veterans Affairs Medical Center. On August 23, 1989, Charles Freeman, acting in his capacity as Administrator of the Department of Veterans Affairs Medical Center, petitioned for judicial commitment of J.M. under La.R.S. 28:54. A hearing on the matter was set for September 11, 1989, nineteen days following filing of the petition. At the hearing, defendant’s counsel objected to holding the hearing beyond the eighteen day requirement of La.R.S. 28:54(C). The objection was overruled. The only witness to testify at the hearing was Dr. Retus Osborn, a psychiatrist. During his direct examination, Dr. Osborn gave hearsay testimony which was objected to by the defendant insofar as it was used to prove the truth of the matter asserted. The testimony was allowed to support the doctor’s medical diagnosis and treatment. Following Dr. Osborn’s testimony, the defendant moved for a dismissal of the proceedings which was denied. The court then ordered judicial commitment of the defendant to the Department of Veterans Affairs. Defendant appeals.
The first issue to be addressed is whether the trial court correctly found that petitioner carried his burden of proof as required by statute. La.R.S. 28:55(E) requires that petitioner prove by clear and convincing evidence that J.M. is dangerous to himself or to others or is gravely disabled due to mental illness. The statute requires that petitioner establish at least one of these three causes, by clear and convincing evidence, to warrant J.M.’s institutionalization. We observe that the enhanced level of proof is mandated by statute and by federal constitutional standards. Addington v. Texas, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (La.1979).
The causes for judicial commitment are defined by statute as follows:
“(3) ‘Dangerous to others’ means the condition of a person whose behavior or significant threats support a reasonable expectation that there is a substantial risk that he will inflict physical harm upon another person in the near future.
(4) ‘Dangerous to self’ means the condition of a person whose behavior, significant threats or inaction supports a reasonable expectation that there is a substantial risk that he will inflict physical or severe emotional harm upon his own person.
[[Image here]]
(10) ‘Gravely disabled’ means the condition of a person who is unable to provide for his own basic physical needs, such as essential food, clothing, medical care, and shelter, as a result of serious mental illness or substance abuse and is unable to survive safely in freedom or protect himself from serious harm; the term also includes incapacitation by alcohol, which means the condition of a person who, as a result of the use of alcohol, is unconscious or whose judgment is otherwise so impaired that he is incapable of realizing and making a rational decision with respect to his need for treatment.”
La.R.S. 28:2(3), (4) and (10).
The only evidence submitted during the hearing was the testimony of Dr. Osborn. He diagnosed J.M. as suffering from “schi-zoaffective disorder” based on his examination of J.M. for approximately five or ten minutes each on approximately two dozen occasions during J.M.’s present and previous admission. Dr. Osborn testified that schizoaffective disorder is a combination of elements of manic depressive illness and classical schizophrenic illness. According to Dr. Osborn, J.M. has inappropriate comparisons of thought and feeling and poor judgment. J.M.’s major problem is his inability to recognize his impairment.
Dr. Osborn stated that patients suffering from schizoaffective disorder exhibit a small scale potential for danger to self because they are self-appreciating. He opined that J.M. probably would not consciously hurt himself and is not suicidal.
On the other hand, based on J.M.’s hospital records and his experiences with similar patients, Dr. Osborn concluded that J.M. is potentially dangerous to others and *102 is gravely disabled. Specifically, Dr. Osborn testified:
“I feel that he is gravely disabled because he has been unable to support his own style of life, uh, emotionally, inter-personally, financially, educationally for some time. I feel too that, uh, he has substantial potential and, again, by history he has been, uh, definitely dangerous, potentially dangerous, in different situations ...
BY MR. YOUNG: Objection to the hearsay again, Your Honor. And we’d like the objection be made general.
BY THE COURT: Yes. You ... you have your ... your objection on record and I’ll let it be made general to the entire line. But I’ll permit the testimony.
BY MR. TEXADA:
Q. Go ahead, Doctor.
A. Oh, that concludes my, uh ... the history strongly points out that, uh, family particularly have suffered. According to family, one sister has left the community for fear of her life from his threats. Uh. Hi ... one with whom he lives has repeatedly pointed out substantial uneasiness of, uh, not knowing what might occur or what could occur on a given moment’s notice, for example. Uh. These are such that they have caused considerable consternation. And repeatedly by history we have interpersonal argumentativeness and disagreements, uh, among the family.”
Although the history relied upon by Dr. Osborn was clearly hearsay, his testimony was nonetheless admissible since observations of family members are reasonably relied upon by psychiatrists when diagnosing and treating patients. La.C.E. arts. 703 and 803(4). On cross-examination, Dr. Osborn admitted that he had no knowledge of J.M. ever harming anyone while in the hospital during this or any other admission or while out in society. Dr. Osborn based his conclusion that J.M. was dangerous to others on his experiences with similar patients and on his opinion that J.M. has a “short fuse” and is impulsive. Dr. Osborn stated that in formulating his conclusions he worries “about odds and possibilities rather than the specific individual”. However, Dr. Osborn agreed, that the current opinion of the American Psychiatric Association based on their Task Force Report, is that the accuracy of predicting whether a patient is dangerous is as low as one in three and no better than one in two.
There is no evidence in the record, other than Dr. Osborn’s hearsay testimony, to support a finding that J.M.'s “behavior or significant threats support a reasonable expectation that there is a substantial risk” of physical harm to others. The history related by Dr. Osborn does not set forth the exact nature of the alleged threats and there is no independent proof to corroborate this allegation. This can hardly be considered as clear and convincing evidence that J.M. is dangerous to others.
On the issue of J.M. being “gravely disabled”, petitioner was required to establish' that J.M. is both unable to provide for his basic physical needs as well as “unable to survive safely in freedom or protect himself from serious harm”. State v. A.C., 543 So.2d 133 (La.App. 2d Cir.1989); In the Matter of M.M., 552 So.2d 528 (La.App. 2d Cir.1989). Other than Dr. Osborn’s above quoted general statement, there is nothing in the record supporting the opinion that J.M. is gravely disabled. There was no indication that J.M. was malnourished or neglecting his hygiene when he was admitted. Dr. Osborn admitted that during his admission, J.M. ate well, wore appropriate clothing and exhibited adequate hygienic habits. Dr. Osborn stated that J.M. refused medication and stayed in seclusion when he was first admitted. However, at the time of hearing, J.M. was taking prolix-in by injection every ten days to two weeks and was cooperating. Dr. Osborn felt that J.M. might stop taking his medication if discharged because in the past, he had been discharged and was readmitted shortly thereafter with a substantially different mental status. Dr. Osborn felt that J.M. had not yet accepted the fact that he is sick and would always need the medication to alleviate his symptoms. There is no proof in the record of respondent’s long standing failure to cooperate by faithfully taking *103 prescribed medication such as to categorize him as “gravely disabled”. See and compare In the Matter of the Commitment of VA, 463 So.2d 998 (La.App. 3rd Cir.1985). There is no evidence in the record concerning shelter for J.M. if discharged or whether he could survive safely or protect himself from serious harm.
Petitioner offered no evidence, from anyone with first-hand knowledge, as to J.M.’s symptoms of mental illness when he is not receiving medication. Likewise, there is no testimony from anyone with personal knowledge of J.M.’s dangerous tendencies or his inability to satisfy his need for food, clothing, shelter and medical care or survive safely in society.
Although the factual findings of the trial court are entitled to great weight, the record must be reviewed in light of the high standards enunciated by statute since the judgment of the trial court involves deprivation of liberty by involuntary commitment. Addington v. Texas, supra; State v. A.C., supra. We conclude that Dr. Osborn’s testimony standing alone does not establish the presence, by clear and convincing evidence, of one of the causes for judicial commitment. Dr. Osborn testified that there is only a small scale potential that J.M, is dangerous to himself. Although Dr. Osborn opined that J.M. has a potential to be dangerous to others, he was unable to point to a single incident where J.M. was harmful to others. Dr. Osborn’s opinion in this regard is further undermined by his admission of the difficulty psychiatrists have in predicting this potential. We find Dr. Osborn’s testimony comparable to that of Dr. Sebastian in State v. A. C, supra, and like the Second Circuit, we do not find that this constitutes solid, competent evidence that respondent is dangerous to others as defined by statute. Finally, we cannot conclude that Dr. Osborn’s testimony clearly and convincingly establishes that J.M. is gravely disabled. Dr. Osborn did not even address the second element of the definition, i.e., unable to survive safely in freedom or protect himself from serious harm. See and compare In the Matter of M.M., supra.
In sum, we conclude that petitioner did not meet his burden of proof by clear and convincing evidence. This conclusion renders appellant’s other assignments of error moot.
For the foregoing reasons, the judgment of the trial court is reversed and respondent is ordered discharged.
REVERSED AND RENDERED.