566 So.2d 1094 (1990)
STATE of Louisiana, in the Matter of B.W.
No. 22085-CA.
Court of Appeal of Louisiana, Second Circuit.
August 22, 1990.
Ed Dixon, Shreveport, for plaintiff/appellee Louisiana State University.
Mental Health Advocacy Service by E. Paul Young, Shreveport, for defendant/appellant B.W.
Before MARVIN, FRED W. JONES, Jr., and SEXTON, JJ.
FRED W. JONES, Jr., Judge.
In this action for judicial commitment respondent, B.W., a 37 year-old female, appealed the judgment of the trial court declaring her to be mentally ill and committing her to Central Louisiana State Hospital for treatment for the duration of the mental illness or until discharge. Finding that the evidence presented by petitioner, Louisiana State University Hospital, did meet the statutory requirement of clear *1095 and convincing proof that B.W. is gravely disabled, we affirm.

Issue Presented
On appeal, respondent presents the following issue for consideration:
Whether the petitioner in a judicial commitment hearing must present factual evidence that respondent is or has recently been unable to secure her essential physical needs and survive safely in freedom in order to support an opinion that she is gravely disabled.

Factual Context
On March 15, 1990 petitioner instituted this proceeding by filing a petition for the judicial commitment of respondent. Petitioner alleged it was the treating agency for respondent who was admitted into the hospital on March 9, 1990 on a Physician's Emergency Certificate. Respondent had been examined independently by the Coroner who executed an Emergency Certificate on March 11, 1990, which certificate would expire on March 24, 1990. Petitioner alleged respondent was suffering from mental illness, was gravely disabled and unable to provide for her own basic needs. Further, due to her condition she was unwilling to seek voluntary admission for treatment. Petitioner stated respondent was in need of long-term in-patient treatment in a long-term treatment facility.
In connection with the commitment hearing, respondent was examined by Dr. Camran Adly. At the hearing, Dr. Adly testified that respondent had been readmitted to the psychiatric unit of the hospital only two days after being discharged and had been hospitalized on three separate occasions in the past few months with her psychiatric condition deteriorating shortly after discharge from each course of hospitalization. Since her last hospitalization on March 9, 1990, Dr. Adly had examined her several times and stated he found her in need of in-patient confinement. He testified that respondent was gravely disabled upon each readmission to the hospital and continued to be gravely disabled due to her psychiatric illness, thus requiring long-term psychiatric hospitalization.
Respondent was diagnosed as suffering from bi-polar disorder which was characterized by an excessive level of energy and activity and acceleration of the thought process so that the thought process became disorganized. Dr. Adly contended the disorganized thought process had interfered with respondent's ability to care for herself as it affected her ability to make accurate judgments. Therefore, respondent could place herself in a position that would be dangerous to herself or others and would be prevented from being able to concentrate on providing herself with the basic needs of living. Dr. Adly testified that respondent's disorder required intensive treatment and medication. Respondent admitted she did not take her medication once outside the hospital.
The doctor based his opinion that respondent was gravely disabled upon his observations of her behavior during the most recent and past hospitalizations. Dr. Adly contended that based on respondent's condition, she had a very strong potential to deteriorate to the degree she would lose the minimal ability to care for herself even though she had shown some capacity to cooperate in her care while hospitalized. Dr. Adly expressed his strong feeling that respondent needed long-term hospitalization in order to be stabilized and to return to the community. Dr. Adly noted that upon respondent's previous discharge she had improved significantly and remained stable for almost a week. Upon readmission two days later she was extremely hyperactive, had very poor control of herself and could not communicate. He did not think respondent had the capacity to organize her thoughts to a minimum degree in order to feed and clothe herself. Dr. Adly admitted there was no evidence that respondent was malnourished or improperly clothed at the time of her readmission. However, he had the impression respondent had not been eating well. Dr. Adly noted that the short period between hospitalizations prevented respondent from becoming severely malnourished. He believed the outside support respondent received after discharge had been minimal.
*1096 Dr. Adly testified that respondent was being treated with two principal psychotropic medications and did not believe these medications would interfere with respondent's participation in the court proceedings.
The evidence established that respondent was receiving social security benefits of $350-400 per month and managed her own funds. It appears respondent had rented a room subsequent to her last discharge.
After reviewing the testimony, the trial court noted respondent's inappropriate statements and behavior during the hearing and stated it believed respondent could not care for herself. The trial court admitted her to Central Louisiana State Hospital as being gravely disabled and in need of involuntary confinement and treatment.

Legal Principles
A judicial commitment of a mentally ill person pursuant to La.R.S. 28:54 is a civil exercise of the state's police power. It is neither a criminal proceeding nor a formal interdiction proceeding affecting the property rights of the person committed. Before the respondent may be subjected to a judgment of civil commitment, the petitioner must show by clear and convincing proof that respondent is dangerous to himself or to others or is gravely disabled as a result of substance abuse or mental illness. By clear and convincing evidence is meant a standard more than a "preponderance" but less than "beyond a reasonable doubt". Therefore, the evidence at a commitment proceeding must establish at least one of three statutory justifications for institutionalization. Along with the statute, federal constitutional guarantees also mandate an enhanced level of proof. Because a person is deprived of liberty by involuntary commitment, the evidence must be reviewed for strict adherence to the high standard of proof required by constitutional and statutory law, notwithstanding the great weight appellate courts must give to the trial court's factual findings. Although the lower court's findings are entitled to great weight, the appellate court must, considering the constitutional rights involved, review the evidence presented and strictly require that it meet the high standards enunicated by law. Matter of M.M., 552 So.2d 528 (La.App. 2d Cir.1989); State v. A.C., 543 So.2d 133 (La.App. 2d Cir.1989); Matter of K.G., 531 So.2d 575 (La.App. 2d Cir.1988); Matter of L.M.S., 476 So.2d 934 (La.App. 2d Cir.1985); Matter of Commitment of VA, 463 So.2d 998 (La.App. 3d Cir.1985), and Commitment of Malvo, 343 So.2d 1178 (La.App. 3d Cir.1977), application denied, 346 So.2d 207 (La.1977).

Judicial Commitment
On appeal respondent argues that the trial court erred in finding that the clear and convincing standard was met to show respondent was gravely disabled and in ordering her judicial commitment. Respondent notes petitioner did not present any witnesses with actual knowledge of her inability to secure her own needs but simply relied upon the opinion testimony of Dr. Adly who did not have any such knowledge. Respondent asserts that she may not be subjected to involuntary confinement simply because she is mentally ill with different behavior, does not always take her medication and has had several psychiatric hospital admissions. Respondent notes two recent reversals by this court in Matter of M.M., supra, and State v. A.C., supra, finding that the evidence failed to meet the statutory requirements for commitment and argues that these cases should be controlling.
The trial court judgment specifically reflects its opinion that the respondent was gravely disabled, after observing her during the commitment proceeding. Therefore, we must ascertain whether the evidence presented at the hearing clearly and convincingly shows respondent gravely disabled within the meaning of the statute.
La.R.S. 28:2(10) defines "gravely disabled" as:
the condition of a person who is unable to provide for his own basic physical needs, such as essential food, clothing, medical care, and shelter, as a result of serious mental illness ... and is unable to survive safely in freedom or protect *1097 himself from serious harm ... (Emphasis added).
The statutory definition thus mandates that two distinct requirements must be satisfied before a person may be found to suffer from a grave disability.
At the hearing, Dr. Adly testified that respondent had been hospitalized on three occasions in the past few months with her last admission coming only two days after her previous discharge. Dr. Adly stated although the respondent had significantly improved and stabilized during her hospitalization, she was in a completely different condition upon readmission and admitted she had discontinued her medication. Dr. Adly based his opinion that respondent was gravely disabled upon his observations of her behavior during the hospitalizations. Respondent would improve and stabilize during the course of her treatment but her condition would deteriorate shortly after discharge. Dr. Adly felt that respondent's disorganized thought process would cause her to lose the minimal ability to care for herself outside the hospital environment. After observing the respondent during the hearing the trial court found she would be unable to care for herself in freedom.
Based upon our review of the record, we find the petitioner met its burden of proving by clear and convincing evidence that respondent was gravely disabled. The testimony of the admitting and primary treating physician was clear and unequivocal and established that respondent was, at the time of the hearing, incapable of providing for her own basic physical needs and surviving safely in freedom. It is significant to note that petitioner had attempted to discharge her from the hospital upon a significant improvement and stabilization of her condition but that condition rapidly deteriorated upon her release when respondent was outside the hospital environment, thus necessitating readmission within several days. The evidence demonstrated that respondent did respond to treatment during the course of her hospitalizations but would quickly deteriorate due to an apparent inability to properly medicate herself. Respondent's history of past hospitalizations with positive results following proper medication combined with her failure to continue the prescribed medication manifested the need for a more restrictive environment. Even though there were no other witnesses testifying as to respondent's behavior or alleged inability to provide for her own needs outside the hospital, the inability of respondent to remain in freedom in a fairly stable condition evidences her inability to provide for her own basic needs and survive safely outside the confines of the hospital.
Additionally, the transcript from the hearing contained numerous unsolicited comments from respondent which were totally inappropriate and indicative of respondent's disorganized thought process. The trial court heard these comments and had the opportunity to observe respondent's behavior and noted for the record it felt respondent was incapable of taking of herself.
Considering the testimony of the treating physician, the observations of the trial court and the inability of respondent to remain outside the hospital for more than a few days, we find the petitioner showed by clear and convincing evidence that respondent was gravely disabled as defined by the statute.
After closely examining the cases cited by respondent, we find them to be distinguishable. In Matter of M.M., supra, (hereinafter referred to as M.M.) and State v. A.C., supra, (hereinafter referred to as A.C.), the respondents had similar symptoms to B.W., particularly disorganized thought and poor judgment. In contrast, it appears that both A.C. and M.M. had not previously been committed. Thus, there was no pattern of repeated hospitalizations with a severe deterioration in their condition upon each readmission as in this case. Although in those cases the petitioner presented only the testimony of the appointed physicians, their testimony was equivocal on the issue of whether the respondents could survive safely outside the hospital. In fact, this court specifically noted M.M.'s coherent testimony on her own behalf. In neither case does it appear *1098 that the respondents exhibited inappropriate behavior at the commitment hearing. Finally, in this case the clear and detailed testimony of Dr. Adly established that one of the effects or symptoms of respondent's chronic disorder was an inability to care for one's basic needs, particularly as respondent was unwilling and unable to medicate herself outside the hospital. Such proof was lacking in M.M. and A.C.

Decree
For these reasons, the judgment of the trial court is AFFIRMED.