644 So.2d 225 (1994)
In re H.W.
No. 94-CA-0406.
Court of Appeal of Louisiana, Fourth Circuit.
September 29, 1994.
Rehearings Denied November 15, 1994.
*226 Gerald Issokson, Mental Health Advocacy Service, New Orleans, for appellant.
Barbara T. Puchot, Dept. of Health and Hospitals, New Orleans, for appellee.
Before BARRY, BYRNES, CIACCIO, WARD and PLOTKIN, JJ.
PLOTKIN, Judge.
Petitioner, Department of Health and Hospitals ("Department"), filed for a judicial commitment of H.W., which was granted by the trial court. The Mental Health Advocacy Service ("MHAS"), appointed to represent H.W., appeals. We conclude that there was sufficient evidence to support judicial commitment of H.W. and thus affirm.

*227 FACTS

H.W. is a 48-year-old man who has lived with his parents for approximately the last five years. On January 14, 1994, H.W. suffered a psychotic episode. His mother reported that she heard banging on the walls of H.W.'s room and he said, "If I ask for something, don't give me water." He was admitted to Medical Center of Louisiana on January 15, 1994, pursuant to an order for protective custody. H.W. previously had been admitted to the hospital on March 16, 1993, after suffering a similar psychotic episode.
At the commitment hearing, the only medical witness who testified was Dr. Robert W. Franklin, H.W.'s resident treating physician. Dr. Franklin testified that H.W. had several psychotic symptoms at the time of his January 15, 1994, admission. For example, H.W. believed that he was employed by the C.I.A. with an annual salary of $42,000, that he had $40 to $50 billion, and was a Reader's Digest sweepstakes winner. H.W. also suffered from paranoia, ideas of reference (a feeling that other people controlled his ideas and words), and looseness of association.
Dr. Franklin interviewed H.W.'s parents, reviewed H.W.'s medical records, consulted with H.W.'s former physicians, and examined H.W. on February 7, 1994, at which time H.W. was delusional and paranoid. Dr. Franklin testified that H.W. spends most of his time in his room because of paranoia and loss of his train of thought. According to Dr. Franklin, H.W. was schizophrenic, was gravely disabled, would not comply with follow-up treatment and medication, and was potentially dangerous.
The trial court found H.W. in need of treatment and rendered a judgment of commitment. No written reasons were issued. The trial court reiterated this in a notation on a request for written reasons filed by H.W.

DISCUSSION
Before analyzing the merits of this case, we must dispense with a preliminary matter. Attached to the Department's brief was a copy of H.W.'s conditional discharge from Southeast Louisiana Hospital. MHAS filed a motion to strike the document.
Recently, in the case of In re P.H., 93-2389 (La.App. 4 Cir. 4/14/94); 635 So.2d 1302, the Department attached to its appellate brief a document showing that the patient was conditionally discharged. MHAS filed a motion to strike. This Court denied that motion because the document suggested the appeal was moot; MHAS was ordered to show cause why the appeal should not be dismissed. In response, MHAS filed a copy of the patient's conditional discharge, which showed that he was required to take prescribed medication and keep scheduled appointments. This Court found that those conditions were "onerous and ultimately flow[ing] from the judgment on appeal" and thus held that the appeal was not subject to dismissal on grounds of mootness. Id. at 1303.
Likewise, in this case, we deny the MHAS's motion to strike despite the fact that H.W.'s conditional discharge suggests this appeal is moot. As in P.H., H.W.'s conditional discharge requires that he take prescribed medication and attend scheduled appointments. Such conditions are onerous and flow from the judgment of commitment, and therefore this appeal is not moot. Id.; see also State v. A.C., 543 So.2d 133, 134 (La.App.2d Cir.1989).
Turning to the merits of this case, we note that in order to commit an individual under the Mental Health Law, the petitioner must show by clear and convincing evidence that the respondent is dangerous to himself or to others or is gravely disabled due to substance abuse or mental illness. LSA-R.S. 28:55(E)(1). On appeal, the evidence must be reviewed for strict adherence to the enhanced standard of proof required by constitutional and statutory law, notwithstanding the great deference that appellate courts traditionally accord a trial court's factual findings. State, In re B.W., 566 So.2d 1094, 1096 (La.App.2d Cir.1990); In re M.M., 552 So.2d 528, 529 (La.App.2d Cir.1989). Absent manifest error, this court must affirm the decision of the trial court. Stobart v. State, 617 So.2d 880, 882 (La.1993); Rossell v. ESCO, 549 So.2d 840, 844 (La.1989). However, because of the deprivations to personal and liberty interests that are involved in a civil commitment, the procedure requires due process *228 protections. Vitek v. Jones, 445 U.S. 480, 487-88, 100 S.Ct. 1254, 1260-61, 63 L.Ed.2d 552 (1980); Addington v. Texas, 441 U.S. 418, 425, 99 S.Ct. 1804, 1808-09, 60 L.Ed.2d 323 (1979). Thus, petitioner can not prevail without proof of at least one of the three statutory grounds for commitment. State, In re B.W., 566 So.2d at 1096.
The record in this case clearly establishes that H.W. has a mental illness, specifically, schizophrenia. We next consider whether the Department proved by clear and convincing evidence that H.W. is either dangerous to himself or others or is gravely disabled due to substance abuse or mental illness.

"Dangerous to Self or Others"
A finding that an individual is dangerous to others requires that the person's behavior or significant threats support a reasonable expectation of a "substantial risk" that he will inflict physical harm to another in the near future. LSA-R.S. 28:2(3). A finding that an individual is dangerous to himself requires that the person's behavior, significant threats, or inaction support a reasonable expectation of a "substantial risk" that he will inflict physical or severe emotional harm upon himself. LSA-R.S. 28:2(4).
At the commitment hearing, Dr. Franklin testified that H.W. could present a risk to others. When asked whether H.W. was a danger to others, Dr. Franklin stated:
I think [H.W.] is a potential danger to others because of the two psychotic episodes both with a violent component. I think right at this moment he is probably not a danger to others. But he has had two recurrent psychotic episodes. And more often than not, this will lead to others in schizophrenia.[1]
On cross-examination, Dr. Franklin was unable to point to any specific instances in which H.W. had threatened others or actually brought about physical harm to another. However, on redirect, Dr. Franklin noted that during much of H.W.'s violent activity no one else was present. According to Dr. Franklin, "We don't know if anyone was present what would happen. I would certainly be fearful if someone were present and he would have one of those episodes." This testimony was uncontroverted; H.W. presented no medical witness to testify on his behalf.
Although Dr. Franklin's testimony is far from definitive on the question, we conclude that there was sufficient evidence that H.W. presented a danger to others. In reaching this conclusion, we note that although the "clear and convincing" standard requires more than a mere preponderance of the evidence, it does not require proof beyond a reasonable doubt. Our review of the record in its entirety persuades us that "the existence of the disputed fact," i.e., that H.W. presented a danger to others, is "highly probable, that is, much more probable than not." In re L.M.S., 476 So.2d 934, 937 (La. App.2d Cir.1985).

"Gravely Disabled"
A person may be committed when he is found to be "gravely disabled." That term is defined by the Mental Health Law as
the condition of a person who is unable to provide for his own basic physical needs, such as essential food, clothing, medical care, and shelter, as a result of serious mental illness or substance abuse and is unable to survive safely in freedom or protect himself from serious harm.
LSA-R.S. 28:2(10). In order to prove grave disability, the petitioner is required to establish that a person is both unable to provide for his basic needs and unable to survive safely in freedom or protect himself from serious harm. A.C., 543 So.2d at 135. The statute clearly requires that both elements be proven; the contention that proof of either of these elements is sufficient has been expressly rejected. In re M.M., 552 So.2d at 529.
With respect to the first requirement, that the person be unable to care for himself, testimony at the hearing showed that H.W. has increased paranoia and decreased interaction with others and that he suffers from chronic hepatitis C and past infection with hepatitis B. Dr. Franklin testified that H.W. *229 has no insight into his illness. H.W. himself denied that he has a mental problem, opining that "I have a nerve problem because I bite my fingernails."[2] Dr. Franklin also testified that he believed that H.W. would not take his prescribed medication if discharged. This evidence, when taken together, indicates that H.W. potentially could not care for himself, specifically with respect to his mental well-being, through adequate medical attention and supervision.
As for the second requirement, that the person be unable to survive safely in freedom or protect himself from serious harm, the record shows in several places evidence indicating that this requirement is also met. For example, although H.W. is 48 years old, testimony at trial showed that the only time he has money is when his elderly parents provide it to him. In addition, H.W. suffers from delusions about his net worth, employment status, and yearly income. H.W. also believes that he won $6 million in the 1987 Reader's Digest sweepstakes. Although H.W.'s mother testified that H.W. has not acted on his delusions of wealth, H.W. has no visible means of support other than his elderly parents. Absent their care and support, H.W., who is, in fact, unemployed, would be unable to care for his own person. In fact, when asked, Dr. Franklin express his belief that H.W. is unable "to provide for his own basic needs" and is unable to survive safely in freedom.[3] As such, there is sufficient evidence to conclude that H.W. could not survive safely in freedom or protect himself from serious harm.
For the foregoing reasons, we conclude that petitioner satisfied the requirements for judicial commitment of H.W. Therefore, the decision of the trial court is affirmed.
AFFIRMED.
BARRY, J., dissents with reason.
BYRNES, J., dissents with the reasons assigned by BARRY, J.
BARRY, Judge, dissenting with reasons.
Petitioner failed to prove by clear and convincing evidence grounds for commitment. Although I concur in the majority's statement of the law, the State did not sustain its burden of proof. I respectfully dissent.
Petitioner did not prove by clear and convincing evidence that the respondent is dangerous to himself or to others under LSA-R.S. 28:2(3) and (4). Dr. Franklin testified that H.W. is a "potential danger" to others based on two psychotic episodes, but Dr. Franklin said that "right at this moment he is probably not a danger to others." Dr. Franklin did not know "whether there was a feeling of a threatening nature" during the most recent psychotic episode, but stated that H.W. did not threaten anyone nor was anyone injured. H.W.'s mother testified that he does not threaten others nor has he hurt himself or others.
The record contains no evidence of behavior, or significant threats, which support a reasonable expectation that there is a substantial risk that H.W. will inflict harm to another in the near future or inflict harm upon himself. The Department failed to prove the elements of R.S. 28:2(3) and (4) by clear and convincing evidence.
The State did not prove the second element of "gravely disabled" under LSA-R.S. 28:2(10), i.e., that H.W. is unable to survive safely in freedom or protect himself from serious harm. Dr. Franklin did not expect H.W. to take medication upon discharge. H.W. had been completely compliant with his medications at the time of the hearing and he said that he would continue taking medication because it was not harmful. H.W. agreed to engage in outpatient service.
H.W.'s mother testified that he can dress, bathe and feed himself, that he has a key to his parents' house and can come and go at will. She noticed improvement in H.W.'s condition since his admission because he "talks better to (her)." She testified that H.W. can continue living with his parents.
*230 Dr. Franklin is not aware of H.W. acting on his delusions of wealth. That was corroborated by H.W.'s mother, who testified that he does not work but he has not incurred substantial debt. Dr. Franklin stated that H.W. was adequately nourished when admitted.
BYRNES, J., dissents with the reasons assigned by BARRY, J.
NOTES
[1] Record, Volume II, at 13.
[2] Record, Volume II, at 42.
[3] Record, Volume II, at 13.