297 So.2d 458 (1974)
In re Mrs. Blanche WILLIAMS Petition for Judicial Commitment.
Willie NICHOLS, Plaintiff-Appellee,
v.
Mrs. Blanche WILLIAMS, Defendant-Appellant.
No. 4601.
Court of Appeal of Louisiana, Third Circuit.
June 28, 1974.
*459 Robert L. Kennedy, Colfax, for defendant-appellant.
Charles B. Bice, Dist. Atty., Colfax, for plaintiff-appellee.
Before HOOD, CULPEPPER and MILLER, JJ.
HOOD, Judge.
Willie Nichols filed a petition for the judicial commitment of his mother, Mrs. Blanche Williams, under the provisions of LSA-R.S. 28:53. An attorney was appointed to represent Mrs. Williams, and after trial, judgment was rendered decreeing that she be judicially committed to the Central Louisiana State Hospital in Pineville, Louisiana, until further orders of the court. An appeal was taken by Mrs. Williams, through her court appointed attorney.
The issues presented involve primarily a determination as to the constitutionality of LSA-R.S. 28:52 and 53, as amended by Act 154 of 1972, and alternatively, a decision as to whether in the application of those statutory provisions Mrs. Williams has been denied due process and equal protection of the law in violation of the Fourteenth Amendment of the Federal Constitution.
LSA-R.S. 28:52 sets out a procedure by which persons alleged to be mentally ill may be apprehended and committed to an authorized treatment facility upon the order of the parish coroner. The statute provides that the affected person must be examined by a physician within 48 hours after his arrival at the examination facility, that the examining physician must submit a written medical report to the coroner within 48 hours after the examination, and that the coroner may sign a confinement order within 72 hours after the above mentioned report is received. The law stipulates that if the person is not examined within 48 hours after his initial admittance to the facility, he shall be released. It also provides that the confinement for treatment order signed by the coroner will be valid for a period of not more than 60 days, and that the patient will be released at the end of that period unless proceedings for the judicial commitment of the person are instituted within that time.
LSA-R.S. 28:53 sets out a procedure for the judicial commitment of a mentally ill person. It provides, among other things, that when a judicial commitment proceeding is instituted and the patient has no attorney, the court shall appoint an attorney to represent him, that a copy of the patient's medical and treatment records will be furnished to the attorney so appointed, and that notice of the hearing be given to the patient and his attorney no later than 48 hours prior to the hearing. It stipulates that after such a hearing if the judge believes that the patient should be committed, he shall issue an order of commitment.
In the instant suit Willie Nichols first applied to the coroner on October 3, 1973, *460 for the apprehension and examination of his mother, Mrs. Williams, who was a 69 year old indigent and illiterate person. Mrs. Williams was admitted to the Central Louisiana State Hospital on that date, and she has remained there up to the present time. The record indicates that she was not examined by a physician within 48 hours after her arrival at the facility, and that a formal confinement for treatment order has never been signed by the coroner. The provisions of LSA-R.S. 28:52 thus were not complied with, and under the provisions of that section Mrs. Williams should have been released 48 hours after her initial confinement.
A petition for the judicial commitment of Mrs. Williams under LSA-R.S. 28:53 was filed by Willie Nichols on November 16, 1973, about 44 days after she was first admitted to the hospital. An attorney was appointed to represent her on that date, and the court fixed a date for the hearing. The attorney appointed to represent Mrs. Williams was provided with a copy of all of the patient's medical and treatment records. The matter was called for hearing on the date fixed by the trial court, but the hearing was postponed due to the illness of the attorney appointed to represent Mrs. Williams. The trial eventually was held on December 13, 1973, at which time counsel for both parties were present, and by agreement of counsel the presence of Mrs. Williams was waived.
On the date of the trial, December 13, 1973, Mrs. Williams, through her appointed attorney, filed an answer to the petition for judicial commitment, and at the same time she filed a petition for a writ of habeas corpus. Both of these matters, that is, the action for judicial commitment and the petition for a writ of habeas corpus, were tried on that date. Judgment was rendered at the conclusion of the trial ordering that Mrs. Williams be committed to the Central Louisiana State Hospital. A formal decree to that effect was signed by the trial judge on December 17, 1973. This appeal was taken in behalf of Mrs. Williams from that judgment.
In the answer and in the petition for habeas corpus filed in behalf of Mrs. Williams, it is alleged that Act 154 of 1972, which amends LSA-R.S. 28:52 and 53, is unconstitutional, in that it denies to persons whose commitment is sought due process of law and equal protection of the laws, for the following reasons: (1) The statute is "vague and indefinite in definitions as to what persons can be confined to a mental institution;" (2) it authorizes the confinement of a person alleged to be mentally ill for a period of up to 60 days, without giving him the right to the "appointment of counsel" or to an "automatic hearing;" and (3) the law gives to the person who institutes the proceedings, rather than to the person whose commitment is sought, the right to have counsel appointed and to have a hearing fixed on the petition for judicial commitment.
It also is alleged and contended in behalf of Mrs. Williams that despite the validity or invalidity of the above statutes, she has been denied due process of law and equal protection of the laws in that she was illegally confined for over 48 days (we figure 44 days) without a confinement order signed by the coroner, without the appointment of counsel and without a hearing.
Most of the above allegations are to the effect that LSA-R.S. 28:52, relating to the coroner's order, is unconstitutional, or that Mrs. Williams was illegally detained prior to the time judgment was rendered in the judicial commitment proceeding. The judgment appealed from, however, was not rendered pursuant to Section 52. It, instead, was rendered in a judicial commitment proceeding instituted under the provisions of LSA-R.S. 28:53.
Counsel for Mrs. Williams argues that Sections 52 and 53 "should be read and the procedures followed together," and that the judgment rendered in the commitment proceeding (under Section 53) is void because Mrs. Williams was denied her constitutional *461 rights when she was initially confined by the coroner (under Section 52) prior to the time the judicial commitment proceeding was instituted.
We believe the procedure provided in Section 52 for obtaining a coroner's "confinement for treatment order" is separate and distinct from the procedure provided in Section 53 for the "judicial commitment" of the person. The law does not require that the procedure outlined in Section 52 be followed before a judicial commitment can be sought or granted under Section 53. In our opinion, an action seeking the judicial commitment of a person under Section 53 may be filed and maintained, regardless of whether a coroner's confinement order was or was not sought previously under Section 52. In a case such as this, where an application for a coroner's order is filed under Section 52, and thereafter a petition is filed seeking the judicial commitment of the same person under Section 53, the proceedings must be regarded as separate actions, and an error in one will not have the effect of invalidating the other.
We have already noted that some of the provisions of LSA-R.S. 28:52 were not complied with during Mrs. Williams' initial confinement prior to November 16, 1973, when proceedings seeking a judicial commitment were instituted. The fact that her confinement prior to the last mentioned date may have been unwarranted, however, does not affect or invalidate the action which was instituted on that date seeking a judicial commitment under Section 53. Our concern here is whether the proceedings instituted on November 16, 1973, and which culminated in the judicial commitment of Mrs. Williams to the hospital, were conducted pursuant to the provisions of Section 53.
The record shows that there has been a compliance with the provisions of LSA-R.S. 28:53. The judgment appealed from is valid and enforceable, therefore, unless it is determined that Section 53 is unconstitutional or that the evidence produced at the trial was not sufficient to support that judgment.
One ground on which the constitutionality of Section 53 is attacked is that it is vague and indefinite. That section provides, in effect, that a person may be committed who is found to be "suffering from a mental illness which causes him to be dangerous to himself or others and/or incapable of caring for himself or his personal safety." We think that provision is clear and definite enough to apprise the person affected of the nature and degree of proof required to support the judgment demanded, and that it satisfies the constitutional guaranty of due process of law. We thus reject the argument that Section 53 is void because it is vague and indefinite.
The only other ground on which the constitutionality of Section 53 is attacked is that it gives to the person who institutes the commitment proceeding the sole right to have counsel appointed for the person alleged to be mentally ill or to have a hearing scheduled. We find no merit to that argument. Prior to the filing of a petition seeking a commitment under Section 53, there is no need to appoint an attorney or to schedule a hearing. The law requires that that be done when the petition is filed. Also, there is nothing in the statute which bars the respondent, that is, the person sought to be committed, of the right to demand the appointment of counsel or the scheduling of a hearing.
The appellant argues, finally, that the judgment appealed from is void because "all evidence used in the judicial commitment was obtained under illegal procedures and therefore should be inadmissible in this suit as civil fruits of the poisonous tree doctrine...."
The petition seeking the judicial commitment of Mrs. Williams was accompanied by the certificate of two physicians that the patient is suffering from a mental illness *462 which causes her to be dangerous to herself or others and/or incapable of caring for herself or her person, all as specifically required by LSA-R.S. 28:53. The certificate recites further that Mrs. Williams was advised of her right to be represented by an attorney, but that "due to mental confusion, she was unable to understand the purpose of the conversation." The doctors then certified that "The recommended judicial commitment is required for future nursing home placement." This certificate was introduced in evidence at the hearing held on December 13, 1973, and it was admitted over the objection urged by counsel for Mrs. Williams.
In addition to the above certificate, there also was introduced in evidence at the trial a copy of the medical record on Mrs. Williams, that being the record kept by the Central Louisiana Hospital and the doctors who attended her from the time of her initial admittance to the hospital on October 3, 1973, until sometime after that date. This record, as well as the above mentioned certificate which was attached to the original petition, shows that Mrs. Williams is suffering from a mental illness which causes her to be dangerous to herself and incapable of caring for herself or her personal safety. Appellant contends, however, that since Mrs. Williams was illegally confined while the above mentioned medical records were made, the information contained in those records was illegally obtained, and the records thus cannot serve as the basis for the judgment appealed from.
The certificate of two physicians which was attached to the original petition constituted at least prima facie proof of the mental illness of Mrs. Williams sufficient to support the judgment committing her to the hospital. That certificate was specifically required by LSA-R.S. 28:53. LSA-C.C.P. art. 853 provides that "A copy of any written instrument which is an exhibit to the pleading is a part thereof for all purposes." Our conclusion is that the certificate of those physicians is admissible in evidence, and that since no proof was presented which tends to contradict the views expressed by those doctors, it serves as sufficient proof to support the judgment appealed from.
Since we have concluded that the above certificate was properly admitted in evidence and that it establishes the mental illness of Mrs. Williams and her need for commitment, it is unnecessary for us to consider the question of whether the hospital records were properly admissible in evidence under LSA-R.S. 13:3714.
The judgment appealed from does not purport to dispose of appellant's petition for a writ of habeas corpus. The trial judge obviously felt, however, that the demand for such a writ became moot when a formal decree was rendered ordering that Mrs. Williams be committed to the hospital. We agree.
Our ultimate conclusion is that LSA-R. S. 28:53 is valid and does not violate the constitutional safeguards claimed in behalf of the appellant. It is unnecessary for us to determine the constitutionality of LSA-R.S. 28:52, since such a determination would be immaterial to the issues presented in this case. The evidence supports the judgment rendered by the trial court, and we find no error in that judgment.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.