GUIDRY, Judge.
On November 15, 1976 Bruce Malvo filed a petition seeking judicial commitment of his daughter, Cindy Malvo (hereinafter referred to as “patient”), under LSA-R.S. *1179 28:53. In accordance with the provisions of this statute the court appointed an attorney to represent the patient and fixed the hearing on such matter for November 22, 1976. Thereafter, the appointed attorney, appearing on behalf of the patient, filed an exception of no cause of action alleging that LSA-R.S. 28:53 is unconstitutional. The patient’s attorney also filed an answer generally denying that she is mentally ill or that any such illness causes her to be dangerous to herself or others and/or incapable of caring for herself. The answer further alleges that Cindy Malvo is being detained at the Central Louisiana State Hospital (hereinafter referred to as “Central”) under a Coroner’s commitment which has expired, and there is no authority for her continued confinement. At the hearing on November 22,1976 the trial judge overruled the exception of no cause of action, although we note that no formal judgment dismissing the same appears in the record. After the hearing the trial court formally decreed Cindy Malvo judicially committed to Central. The appointed attorney has perfected an appeal on behalf of the patient, Cindy Malvo.
A review of the record indicates that the patient, an eighteen year old female, with a twelfth grade education, was at the time of the institution of these proceedings a patient at Central. She had been confined to the hospital on September 10, 1976 as a result of a 60 day Coroner’s commitment under LSA-R.S. 28:52 [1] The patient had been previously treated at Central from October 1, 1975 to January 5, 1976.
The record shows that by letter to Bruce Malvo, dated October 28, 1976, the attending physician and clinical director of Central, Drs. W. L. Kirkpatrick and H. A. King, respectively, certified that the patient, Cindy Malvo, continues to suffer from a mental illness which causes her to be dangerous to herself or others and/or incapable of caring for herself or her person. The letter of certification sets forth that the patient will require treatment longer than the 60 days covered by the Coroner’s commitment and that a judicial order of commitment should be sought if treatment of the patient is to continue. Additionally the letter certifies that the patient was advised of her right to counsel to which she replied: “I’m O.K.— there’s nothing wrong with me.”
Following receipt of this letter Bruce Malvo filed the petition in the instant matter, attaching thereto the above referenced letters of certification. The petition was served upon the patient’s appointed attorney, who thereafter contacted the Central Louisiana State Hospital in this regard. The appointed attorney in a statement to the trial court stated that he spoke with the social worker in charge of the patient and discussed with her the patient’s ability to cooperate with him in the presentation of her defense. The appointed attorney related that the social worker was of the opinion that the patient would not be able to assist him very effectively and having her summoned to be present at the hearing would serve no useful function. In response to a request from patient’s attorney Central forwarded him certified and true copies of the patient’s medical files,' which the attorney introduced into evidence as Defendant’s Exhibit 1. On the basis of this evidence the appointed attorney formally waived the presence of Cindy Malvo at the hearing.
The medical records of the patient introduced by her attorney reveal that she is suffering from an acute paranoid schizophrenic reaction with self destructive tendencies. Daily medical charts indicate that the patient was usually hostile and agitated, using loud and profane language.
The only two witnesses to testify were Mr. and Mrs. Bruce Malvo, both of whom *1180 stated Cindy had, just prior to her commitment attacked Mrs. Malvo; that on occasion she lost control of herself, screaming and hollering and pulling at her hair; and that she was real nervous and trembled all the time. Their testimony revealed that Cindy had never attacked anyone else.
On the basis of the certification of Drs. Kirkpatrick and King to the effect that the patient suffers from a mental illness which causes her to be dangerous to herself and others and/or incapable of caring for herself; the medical records introduced as D-l, which included further certification of the patient’s condition; and, the testimony of Cindy’s parents, Mr. and Mrs. Bruce Malvo, the trial court entered an order judicially committing the patient to Central.
The patient appeals and contends that the trial court erred in the following particulars:
1. In finding that LSA-R.S. 28:53 was constitutional, and not in violation of the patient’s substantive due process rights.
2. In finding that the patient, Cindy Malvo, was not deprived of her constitutional rights to procedural due process, specifically the right to confrontation.
3. In concluding from the evidence adduced that the patient was dangerous and incapable of caring for herself, and further, in failing to appoint a commission under LSA-R.S. 28:54 to examine the patient.
In responding to defendant’s first contention we observe, and the defendant admits, that LSA-R.S. 28:53 has been the subject of constitutional scrutiny by this court before, and on each occasion the statute has been upheld as constitutional. In Hickman v. Fletcher, 317 So.2d 219 (La.App. 3rd Cir. 1975), writ refused 321 So.2d 366 (La.1975), we found the statute to comport with due process and the equal protection clauses of the 14th amendment. In In Re Williams, 297 So.2d 458 (La.App. 3rd Cir. 1974), the statute was found to be neither vague nor indefinite. See also State v. Commitment of Jackson, 289 So.2d 565 (La.App. 3rd Cir. 1974). Defendant argues however, that these decisions are not controlling having been rendered without consideration of the later United States Supreme Court decision in O'Connor v. Donaldson, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975).
Our study of the O’Connor case convinces us that it is inapplicable to the instant matter. In O’Connor, a patient, who had been involuntarily committed to a state mental institution for over 15 years brought an action in damages against the institution alleging that he had been deprived of his constitutional right to liberty. The evidence showed that the patient was neither dangerous to himself or to others and had not received treatment. In spite of this his frequent requests for discharge were refused, notwithstanding undertakings by responsible persons to care for him if necessary. The Supreme Court held that a State cannot constitutionally confine, without more, a non-dangerous individual who is capable of surviving safely in freedom by himself or with the help of willing family members and friends.
Able counsel for the patient argues that O’Connor holds that a finding of “mental illness” alone will not justify the institutionalization of a non-dangerous person, against his will who is incapable of caring for himself, without a showing by the committing authority that there is no alternative to custodial care. He contends therefore, that this being so, LSA-R.S. 28:53 is unconstitutional in that it contains no requirement for this alternative showing.
We do not agree that O’Connor espouses the proposition that it is incumbent upon the committing authority, before commitment of a non-dangerous person suffering from mental illness and who is incapable of caring for himself, to establish that there is no alternative to custodial care and that the statutory authority for involuntary commitment of such persons must contain such a proviso. Rather, the premise of O’Connor is simply to the effect that the continued institutionalization of such a person, when it is shown that such person is capable of living safely in freedom by him *1181 self or with the help of willing family members or friends deprives snch person of his constitutional right to liberty. O’Connor does not set a new standard for the initial commitment of mentally ill persons incapable of surviving safely in freedom but rather defines the conditions essential to their continued institutionalization. To require otherwise would place an almost impossible burden on the committing authority, i.e., the proof of a negative. It is common knowledge that in most, if not all, commitment proceedings the persons seeking commitment are those having the most concern for the health and personal safety of the mentally ill person. Clearly, in our view, the decision in O’Connor imposes no new constitutional limitation on the State’s power to judicially commit persons upon a showing that the individual is dangerous to himself or others and/or incapable of earing for himself or his personal safety. If anything the Supreme Court in O’Connor reaffirmed that State power.
This being considered we are of the opinion that LSA-R.S. 28:53, which requires a showing of mental illness which causes the person to be dangerous to himself or others and/or incapable of caring for himself or his personal safety before commitment affords all the constitutional safeguards of substantive due process. See Hickman v. Fletcher, supra; In re Williams, supra; State v. Commitment of Jackson, supra.
We next consider defendant’s contention that the statute and the application thereof by the trial court violates patient’s constitutional right of- procedural due process. More particularly appellant contends that LSA-R.S. 28:53 as applied, i.e., her commitment by the trial court, partially on the basis of the certificate of two physicians certifying that the patient is suffering from a mental illness which causes her to be dangerous to herself or others and/or incapable of caring for herself or her personal safety and corroborating medical records, violates her constitutional right to confrontation under the Sixth and Fourteenth Amendments to the U. S. Constitution and Louisiana Constitution Article 1 Section 16. This interesting argument was neither advanced nor considered in the three above cited cases.
At the outset we observe that it is well established that judicial commitment of a mentally ill person under LSA-R.S. 28:53 is a civil exercise of the State’s police power. It is neither a criminal proceeding nor a formal interdiction proceeding affecting the property rights of the person committed. In re Ingram, 82 So.2d 788 (La. App. 1st Cir. 1955). All of the procedural rules applicable to civil proceedings prevail in a commitment proceeding under LSA-R.S. 28:53. Although we acknowledge that the constitutional right of confrontation may be applicable in civil commitment proceedings we do not conclude that if applicable its application is or should be with the same force or rigidity as in criminal proceedings.
LSA-R.S. 13:3714 which provides as follows:
“Whenever a certified copy of the chart or record of any hospital in this state, signed by the director, assistant director, superintendent or secretary-treasurer of the board of administrators of the hospital in question, is offered in evidence in any court of competent jurisdiction, it shall be received in evidence by such court as prima facie proof of its contents, provided that the party against whom the record is sought to be used may summon and examine those making the original of said record as witnesses under cross-examination.”
and LSA-R.S. 28:53 permit the introduction in evidence of the certificate of the two physicians and the medical records which support the physicians’ certification that the patient was in fact mentally ill and dangerous to herself or others and/or incapable of providing for her own care and safety. These documents furnished at the very least prima facie proof of the matter therein contained. The patient was not completely deprived of her constitutional right of confrontation by the introduction of these documents for LSA-R.S. 13:3714 *1182 specifically grants to the patient the right to summon and examine those making the original of said records as witnesses under cross-examination. Further, we observe that under LSA-R.S. 28:53 it is the right of the patient to participate in the hearing and offer evidence in her own behalf and to present a defense. As a part of that right she has the right to compel attendance and testimony of witnesses and the right to an independent expert examination regarding her mental illness.
In the instant case patient through counsel waived her right to participate in the hearing. We do not question the propriety of this decision, rather to the contrary the record reveals that counsel after examination of the medical records and consultation with the staff at Central- determined that patient was suffering from a mental illness as a result of which she would be of no effective assistance at the hearing. In short her appearance would have served no useful function. We do note however, that patient’s attorney did not require the presence of Drs. Kirkpatrick and King for purpose of cross-examination. He made no effort to-secure the attendance of witnesses or secure an independent medical examination of patient in order to counter, if possible, the prima facie showing of mental illness and dangerousness established by the physician’s certificates and medical records. We do not necessarily question the propriety of this decision for the medical records and certificate appear to indicate that such action would have been at best an exercise in futility. Be that as it may, under the circumstances, there was no denial to patient of the right of confrontation. The right was there to be exercised. Plaintiff simply failed to take advantage of the right of confrontation which was afforded to her by LSA-R.S. 28:53, LSA-R.S. 13:3714 and pertinent articles of Louisiana’s Code of Civil Procedure. See State v. O’Brien, 255 La. 704, 232 So.2d 484 (1970).
For these reasons we find no merit in this contention.
Appellant finally asserts that the trial court erred in concluding from the evidence adduced that the patient was dangerous and incapable of caring for herself, and further, in failing to appoint a commission under LSA-R.S. 28:54 to examine the patient. This very issue was considered by us in In re Williams, supra. In Williams we stated:
“The certificate of two physicians which was attached to the original petition constituted at least prima facie proof of the mental illness of Mrs. Williams sufficient to support the judgment committing her to the hospital. That certificate was specifically required by LSA-R.S. 28:53. LSA-C.C.P. art. 853 provides that ‘A copy of any written instrument which is an exhibit to the pleadings is a part thereof for all purposes.’ Our conclusion is that the certificate of those physicians is admissible in evidence, and that since no proof was presented which tends to contradict the views expressed by those doctors, it serves as sufficient proof to support the judgment appealed from.”
In the instant case, like Williams, the certificates of the two treating physicians together with all the patient’s medical records standing alone, without contradictory proof, were sufficient to support a judicial commitment.
Finally in regards to the argument that the trial court erred in not appointing a commission under LSA-R.S. 28:54 to examine the patient, we observe that the provisions of that statute do not compel the appointment of a commission. Rather, LSA-R.S. 28:54 provides that “If a judge believes additional evidence is necessary, he may appoint a commission”. Our review of the record indicates that no additional evidence regarding the patient’s mental illness was necessary, and that she was a proper subject for commitment.
For the above and foregoing reasons the judgment appealed from is affirmed.
AFFIRMED.

. No issue is raised regarding the validity of the Coroner’s commitment of the patient to Central under LSA-R.S. 28:52, although the patient’s attorney alleges that the Coroner’s commitment has now expired and that at the time of the hearing she was being held without authority.. We have previously held that a judicial commitment under LSA-R.S. 28:53 may be validly accomplished even though there has been no compliance with the provisions of LSA-R.S. 28:52. Hickman v. Fletcher, 317 So.2d 219 (La.App. 3rd Cir. 1975), writ denied 321 So.2d 366 (La. 1975).