| iDECUIR, Judge.
This is an appeal from a judgment committing W.R. for observation, care and treatment of her mental illness pursuant to La. R.S. 28:1, et seq. Appellant argues her commitment violates the due process clauses of the United States and Louisiana Constitutions because contrary to the trial judge’s findings, she is not dangerous to herself or others and is capable of surviving safely in freedom with the help of willing family members. Appellant further argues that the trial judge erred in finding that she was gravely disabled by clear and convincing evidence. We find no error in the trial court’s rulings.
Whether a person is mentally ill and/or gravely disabled and unable to survive safely in freedom are factual determinations to be made by the trial court and these findings are not to be disturbed in the absence of manifest error. Matter of Commitment of VA, 463 So.2d 998 (La.App.3d 1985). We are mindful that the findings of the trial court are entitled to great weight; however, the appellate court must consider the constitutional rights involved, review the evidence presented and strictly require that the evidence meet the high standards enunciated by law. State in the Matter of B.W., 566 So.2d 1094 (La.App. 2 Cir.1990); Commitment of Malvo, 343 So.2d 1178 (La.App.3d Cir.), writ denied, 346 So.2d 207 (La.1977). Applying the jurisprudence to the case sub judice we conclude that the evidence clearly and convincingly supports a finding that W.R. is gravely disabled as a result of her mental illness and is unable to survive safely in freedom.
|2The record reveals that W.R. is 26 years old and was diagnosed on admission to Acadi-ana Mental Health Center as anorexia nervo-sa by the admitting physician who described W.R. as emaciated and ordered supplemental feedings. The evidence also reflects that W.R. was admitted with an additional diagnosis of schizophrenia, paranoid type. During her hospitalization, W.R. attempted to avoid eating by discarding her food. Furthermore, W.R. testified at trial she feels she is eating too much and gaining too much weight.
Dr. David Regan, a psychiatrist and medical director of Acadiana Mental Health, examined W.R. Dr. Regan testified he diagnosed W.R. as suffering from major depression, recurrent, with psychotic features. W.R. related to Dr. Regan that she has been hearing voices since the age of 14. W.R. corroborated this testimony at trial. W.R. also related to Dr. Regan that she had “killed a cop.” It is Dr. Regan’s opinion that W.R. has no insight into her mental condition, she does not understand the need to take medication and undergo treatment, that she cannot provide for herself, and she cannot survive safely if discharged. Dr. Regan is of the opinion that W.R.’s condition is such that she needs in-patient care and that her condition will deteriorate if released.
W.R.’s testimony clearly corroborates Dr. Regan’s opinion. W.R. testified that she lives in New Iberia and that “some people know it as Georgia and also Chicago.” W.R. stated that her house is movable “so it doesn’t really exist in just one city.” W.R. also testified her house is in Chicago now. W.R.’s responses were bizarre and not responsive to the questions posed. For example, when asked: “... this house in Chicago, is that where your parents live also?” W.R. responded “Yeah. In the formation of 1950.” When asked whether she thought Dr. Regan was giving good advice, she responded: “I don’t know. I don’t remember the date.” Furthermore, W.R. sees visions and hears voices.
Appellant argues that W.R. is capable of surviving safely in freedom with the help of willing family members. We agree with the trial judge’s finding of a failure in the family unit to protect and properly care for W.R. The record reflects that W.R. never received treatment prior to her admission to Acadiana *581 Mental Health Center despite her parents’ knowledge of W.R.’s mental illness. Dr. Re-gan testified that in his opinion W.R. has not received the care she has needed for several years despite living with her parents during that period of time. W.R. has a history of wandering off and running away from home. A review of the testimony of W.R.’s mother reflects that she was aware of her daughter’s weight loss, but spoke to only one physician, who has since retired, ^regarding this problem. According to W.R.’s mother, she has been having problems finding a new doctor. When asked whether she would like her daughter home, W.R.’s mother responded: “I guess so.” When asked whether she would start taking her daughter to another physician, W.R.’s mother was evasive in her response stating:
“Well, we need to find her one that will take her. It goes through a lot of process. Some of them say, well, like I said, it’s been difficult because they have so many patients. And if you don’t have someone in the family there, you need to.”
Also, when asked what plans did he have to continue counseling or treatment for his daughter, W.R.’s father responded: “I really don’t know yet. I’d have to see what I could do.”
We conclude from the record that W.R.’s family has failed to meet her needs in the past and are unable to commit to providing her with the medical care and treatment she requires.
Por the above and foregoing reasons, the decision of the trial court is affirmed. Costs of appeal are assessed to appellant.
AFFIRMED.