hWHIPPLE, Judge.
This is an appeal by respondent, W.C., from a trial court judgment, judicially committing him to the East Louisiana State Hospital. For the following reasons, we affirm.
*636 FACTS AND PROCEDURAL HISTORY
On February 28, 1996, Dr. Denise Graham, director of the East Louisiana State Hospital, filed a petition for judicial commitment of W.C. pn the basis that he was gravely disabled. Prior to the hearing in this matter, the trial court ordered Dr. Francine Morrison, W.C.’s treating physician at East Louisiana State Hospital, to independently examine W.C. and file a written report with the court concerning the examination, pursuant to LSA-R.S. 28:54. The court further ordered that Dr. Morrison and Stacie Zerangue, the mental health social worker assigned to W.C. at East Louisiana State Hospital, appear and testify at the hearing on the petition for W.C.’s judicial commitment, which was conducted on March 15,1996.
When called to testify, Zerangue was questioned without objection about W.C.’s place of residence, the location of any family, any contact his family had maintained with him with him and his age. However, when questioned about W.C.’s educational background, counsel for W.C. objected on the bases of hearsay, privilege and “the fact that [W-C.’s] medical record [had] not been properly put into evidence.” The court overruled the objection, which was made general and continuing as to Zerangue’s testimony. Thereafter, Zerangue testified about W.C.’s educational background, work history and behavior since his admittance to East Louisiana State Hospital.
Dr. Morrison then testified regarding her diagnosis of W.C. as suffering from paranoid schizophrenia, his behavior at the hospital, and her opinion that he was in need of judicial commitment.
|sAt the conclusion of the hearing, the trial court rendered oral reasons finding that W.C. suffered from a mental illness which rendered him gravely disabled, he was in need of treatment and the least restrictive facility for his treatment was East Louisiana State Hospital. Accordingly, the trial court rendered judgment on April 11, 1996, judicially committing W.C. to East Louisiana State Hospital.
W.C. appeals, averring that the trial court erred:
(1) in permitting W.C.’s social worker to disclose confidential information where W.C. did not consent to the disclosure and where the statutory waiver of the health care provider-patient privilege in judicial commitment hearings did not apply; and
(2) in finding sufficient evidence had been presented to support judicial commitment of W.C. on the basis of grave disability.[1]
ASSIGNMENT OF ERROR NUMBER ONE
At the outset, W.C. states that this appeal was taken “to rectify the continuing irregularity of social workers testifying to the contents of their client’s medical record.” W.C. avers that pursuant to LSA-C.E. art. 510, a social worker may not breach a client’s confidence in judicial commitment proceedings, and, thus, Zerangue’s testimony was inadmissible.
Louisiana Code of Evidence article 510,[2] entitled “Health care provider-patient privilege,” provides that in civil proceedings, “a patient has a privilege to refuse to disclose and to prevent another from disclosing a confidential communication made for the purpose of advice, diagnosis or treatment of hisjjhealth condition between or among himself or his representative, his health care provider, or their representatives.”[3] LSA-C.E. 510(B)(1) (emphasis added). A “confidential communication” is defined in Section A of the article as follows:
*637 (8)(a) “Confidential communication” is the transmittal or acquisition of information not intended to be disclosed to persons other than [persons involved in the patient’s treatment],
(8)(b) “Confidential communication” includes any information, substance, or tangible object; obtained incidental to the communication process and any opinion formed as a result of the consultation, examination, or interview and also includes medical and hospital records made by health care providers and their representatives.
LSA-C.E. art. 510(A)(8)(a) & (b) (emphasis added).
Pursuant to this article, any “confidential communications” made by W.C. to Zerangue are privileged.[4] Thus, the question presented is whether Zerangue’s testimony with regard to W.C.’s educational background, work history and behavior at the hospital involved disclosure of confidential communications which should have been ruled inadmissible under LSA-C.E. art. 510.
We conclude that Zerangue’s testimony as to W.C.’s educational background and work history was obtained by Zerangue as a confidential communication, in that this information was obtained either from W.C. or his representative for the purpose of advice, diagnosis, or treatment of W.C.’s |5condition.[5] See LSA-C.E. art. 510(A)(8)(b) & (B)(1); see also Sarphie v. Rowe, 618 So.2d 905, 908 (La.App. 1st Cir.), writ denied, 620 So.2d 1324 (La.1993) (patient’s name is a privileged confidential communication). Thus, the trial court erred in allowing Zerangue to testify as to this information.
On the other hand, with regard to Ze-rangue’s testimony as to W.C.’s behavior at the hospital, we conclude that this testimony did not constitute inadmissible disclosure of confidential communications. Zerangue testified that she had observed W.C. talking to himself, periodically and unpredictably repeating numbers, and then raising his hand, looking up and referring to demons.
Although the definition of confidential communication under LSA-C.E. art. 510 is broad, inherent in the definition are the concepts of something being expressed by one person to another (“any information ... obtained incidental to the communication process”) and an intent that this information not be disclosed to others (“transmittal or acquisition of information not intended to be disclosed”). We cannot conclude that the definition of “confidential communication” is so broad as to include behavior of the patient where, as here, he was making no attempt to communicate with anyone, including persons involved in his treatment and where the behavior was merely observed by the health care provider. Such a holding would lead to a situation where evidence of behavior such as striking other patients or failure of the patient to provide for his basic physical needs would be inadmissible as privileged “communication.”
We do not believe that article 510 was intended to be so far-reaching. Clearly, article 510 is concerned with protecting the confidences a patient communicates to his health care provider and the fact that disclosure of the 16patient’s confidences could be detrimental to the health care provider-patient rela *638 tionship. However, information regarding behavior of an inpatient in a mental hospital which is not derived through or from the communication process is beyond the reach of the article 510 privilege.
W.C. points to this court’s opinion in Sarphie v. Rowe, 618 So.2d 905 (La.App. 1st Cir.1993), in support of the argument that this court should find that all observations of a patient’s behavior are encompassed within the article 510 privilege. In Sarphie, this court stated that “when an individual walks into a doctor’s office and opens his mouth, ... everything spilling out of it, whether it be his identity or his false teeth (a ‘tangible object’), is presumptively privileged and beyond the reach of discovery.” Sarphie, 618 So.2d at 908. However, Sarphie involved discovery of a patient name list from a chiropractic clinic and, thus, involved disclosure of information obtained through communication by the patient of his name to a doctor. Clearly, the pronunciation by this court was based upon the underlying concept of protecting the communication process between doctor and patient. Here, Zerangue’s testimony regarding W.C.’s behavior was not based upon any communication between Ze-rangue and W.C.
Therefore, we conclude that while the trial court impermissibly allowed Zerangue to testify as to W.C.’s educational background and work history, her testimony regarding behavior she observed at East Louisiana State Hospital did not constitute disclosure of priv-' ileged communications pursuant to LSA-C.E. art. 510. Accordingly, the trial court did not err in allowing this testimony.[6]
|7A1so, the error by the trial court does not warrant reversal unless the error harmed or prejudiced W.C.’s cause. Boutte v. Winn-Dixie Louisiana, Inc., 95-1123, p. 9 (La.App. 3rd Cir. 4/17/96); 674 So.2d 299, 305. We conclude that any error in allowing Zerangue to testify as to W.C.’s educational background and work history, when compared to the record as a whole, was harmless and had no substantial effect on the outcome of the ease. Thus, we conclude that the trial court’s error in admitting this brief testimony was harmless.
ASSIGNMENT OF ERROR NUMBER TWO
W.C. next contends that the trial court erred in finding that there was sufficient evidence to judicially commit him. In order to subject a respondent to a judgment of civil commitment, the petitioner must show by clear and convincing proof that the respondent is dangerous to himself or to others or is gravely disabled as a result of substance abuse or mental illness. LSA-R.S. 28:55(E)(1); Addington v. Texas, 441 U.S. 418, 433, 99 S.Ct. 1804, 1813, 60 L.Ed.2d 323 (1979). The judicial commitment was sought on the basis that W.C. was gravely disabled and unable to provide for his own basic needs. To meet the burden of proving that W.C. was gravely disabled, the petitioner was required to establish that W.C. was both “unable to provide for his own basic physical needs, such as essential food, clothing, medical care and shelter” and “unable to survive safely in freedom or protect himself from serious harm.” LSA-R.S. 28:2(10); Judicial Commitment of J.M., 560 So.2d 100, 102 (La.App. 3rd Cir.1990).
Whether a person is mentally ill and/or gravely disabled and unable to survive safely in freedom are factual determinations to be made by the trial court, and these findings will not be disturbed in the absence of manifest error. In re \%Judicial Commitment of W.R., 94-473, p. 1 (La.App. 3rd Cir. *639 11/2/94); 649 So.2d 579, 580. Although the factual findings of the trial court in commitment cases are entitled to great weight, the record must be reviewed in light of the high standard of proof required by constitutional and statutory law since the judgment of the trial court involves deprivation of liberty by involuntary commitment. State v. A.C., 543 So.2d 133, 135 (La.App. 2nd Cir.1989).[7]
The record in this ease clearly establishes that W.C. suffers from a serious mental illness, specifically paranoid schizophrenia. Dr. Morrison, W.C.’s treating physician at East Louisiana State Hospital, addressed W.C.’s ability to provide for his own basic physical needs and survive safely in freedom, and testified as to the behavior leading to W.C.’s admission to the hospital, stating that he was “highly agitated, hostile, screaming, and he was overtly delusion[al].” Dr. Moni-son noted that W.C. was hospitalized initially on an emergency commitment due to his behavior when he appeared at his regular medical clinic appointment. She stated she was unable to complete her intake interview with W.C. because of his agitated, overly delusional state. Dr. Morrison further opined that W.C. remained gravely disabled noting that as of her last examination of W.C., conducted pursuant to the court’s order, W.C. was still psychotic and still exhibited paranoid behavior. Additionally, W.C. continued exhibiting behavior indicating that he does not know where he is from and that he does not know his true identity.
Zerangue, W.C.’s mental health social worker, also testified that since W.C.’s admission to the hospital, she observed W.C. talking to himself, periodically and unpredictably repeating numbers, raising his hand, looking up and referring to demons. W.C. was placed on a medication called Haldol | gDeconoate, to be given every four weeks, and was cooperating with taking his medication. Zerangue further testified that during his hospitalization, W.C.’s oral hygiene had been “fair,” and he was able to feed and dress himself.
Dr. Morrison further stated that despite the fact that W.C. is no longer easily agitated and had not had an episode of yelling, and screaming on the unit in the ten day period prior to the hearing, continued hospitalization was nonetheless indicated at the time of the hearing because of his continued psychotic, paranoid, delusional behavior.
Considering this evidence, and the reasonable inferences which the trial court was entitled to draw therefrom, we conclude that the petitioner presented sufficient evidence to satisfy the heightened burden of proof in commitment cases to establish that W.C.’s state of mind rendered him unable to provide for his own basic needs and to survive safely in freedom or protect himself from serious harm. Thus, the petitioner satisfied the requirements for judicial commitment of W.C.
CONCLUSION
For the above and foregoing reasons, the April 11, 1996 judgment of the trial court, which committed W.C. to East Louisiana State Hospital for further observation, care and treatment is affirmed. No costs are assessed in this appeal.
AFFIRMED.
FITZSIMMONS, J., concurs and assigns reasons.

. On May 30, 1996, the Department of Health and Hospitals filed a motion to dismiss the appeal as moot on the basis that W.C. had been discharged from East Louisiana State Hospital on April 25, 1996. By order dated July 15, 1996, this court denied the motion.

. Under Louisiana’s Mental Health Law, the usual rules of evidence apply to judicial commitment proceedings. LSA-R.S. 28:55(D).

. "Health Care Provider” is defined in LSA-C.E. art. 510 to include "[a] person licensed as a professional mental health counselor or board certified social worker under the laws of any state or nation." LSA-C.E. art. 510(A)(2) & (A)(4)(c).

. A privilege does not exist under this article with respect to communications made in the course of an examination ordered by the court regarding the health condition of the patient where the fact that the examination was so ordered was made known to the patient prior to the communication and the communication concerns the particular purpose for which the examination was made. LSA-C.E. art. 510(B)(2)(f). Additionally, there is no privilege when the communication is made by a patient who is the subject of a commitment proceeding to his current health care provider when the patient has failed or refused to submit to an examination by a health care provider appointed by the court regarding issues relating to the commitment proceeding, provided the patient has been advised of the appointment and the consequences of not submitting to the exam. LSA-C.E. art. 510(B)(2)(g).
In the instant case, the court did not order an examination of W.C. by Zerangue, nor did W.C. refuse to submit to the court-ordered examination by Dr. Morrison. Thus, these exceptions to the privilege seemingly do not apply.

. A patient’s "representative” is defined as "any person who makes or receives a confidential communication for the purpose of effectuating diagnosis or treatment of a patient.” LSA-C.E. art. 510(A)(5).

. W.C. also relies upon the recent United States Supreme Court case of Jaffee v. Redmond, - U.S. -, -, 116 S.Ct. 1923, 1931, 135 L.Ed.2d 337 (1996), in which the Court interpreted Federal Rule of Evidence 501 as providing a privilege protecting confidential communications between a licensed social worker and patient. However, we note that.the Court specifically held that confidential communications between a psychotherapist or social worker and patient in the course of diagnosis or treatment are protected from compelled disclosure under Federal Rule of Evidence 501. Jaffee, -U.S. at-, 116 S.Ct. at 1931. Thus, the Court held that the conversations between the patient and social worker and the notes taken during their counseling sessions were protected from compelled disclosure. Jaf-fee, - U.S. at -, 116 S.Ct. at 1932. We, likewise, hold that any conversations or confidential communications between W.C. and Ze-rangue are privileged and protected from disclosure under LSA-C.E. art. 510.

. In determining whether the evidence is sufficient to support the trial court's judicial commitment of W.C., we give no consideration to that portion of the testimony by the social worker which was improperly admitted.