Dear Sirs:
This office is in receipt of both your opinion requests, concerning issues relative to the health care provider privilege in civil and criminal proceedings. Since your requests concern similar topics, we will respond to both in this opinion.
Specifically, you state that certain district courts in Caddo Parish have held that any communications made by or about a patient prior to court-ordered examination pursuant to LSA C.E. Art. 510 is inadmissible in judicial commitment proceedings under the health care provider privilege. Additionally, you state that these courts have held that Art. 510 prohibits a court-appointed physician from reviewing the patients' past medical records.
Louisiana Code of Evidence Article 510, in pertinent part, states:
 B.(1) General rule of privilege in civil proceedings. In a non-criminal proceeding, a patient has a privilege to refuse to disclose and to prevent another person from disclosing a confidential communication made for the purpose of advice, diagnosis or treatment of his health condition between or among himself or his representative, his health care provider, or their representatives.
 (2) Exceptions. There is no privilege under this article in a non-criminal proceeding as to communication:
* * *
 (f) When the communication is made in the course of an examination ordered by the court with respect to the health condition of a patient, the fact that the examination was so ordered was made known to the patient prior to the communication, and the communication concerns the particular purpose for which the examination was made, unless the court in its order directing the examination has stated otherwise.
 (g) When the communication is made by a patient who is the subject of an interdiction or commitment proceeding to his current health care provider when such patient has failed or refused to submit to an examination by a health care provider appointed by the court regarding issues relating to the interdiction or commitment proceeding provided that the patient has been advised of such appointment and the consequences of not submitting to the examination.
Your concerns are that the judicial interpretations placed on these provisions conflict with the judicial commitment procedures in LSA-R.S. 28:54(D)(1) which, in part, states:
 As soon as practical after the filing of the petition, the court shall review the petition and supporting documents, and determine whether there exists probable cause to believe that the respondent is suffering from mental illness which contributes to his being or causes him to be a danger to himself or others or gravely disabled, or is suffering from substance abuse which contributes to his being or causes him to be a danger to himself or others or gravely disabled. If the court determines that probable cause exists, the court shall appoint a physician, preferably a psychiatrist, to examine the respondent and make a written report to the court and the respondent's attorney on the form provided by the office of human services of the Department of Health and Hospitals. The court-appointed physician may be the respondent's treating physician. (Emphasis added.)
The potential ramifications as you see them are that, if court-appointed physicians are limited to information discovered solely from the physician's court-ordered patient examination, the potential for misdiagnosis and insufficient diagnostic evaluation of the patient would result. Moreover, you point out the various fields of medical practice may consider this approach unethical to their professions.
This office has been unable to identify the cases you refer to in your request. However, their rulings, as you describe them, can be justified by a brief review of the purpose behind the health care provider privilege.
Pursuant to LSA-C.E. Art. 510, any "confidential communications" made by a patient to his or her treating physician are privileged. Any testimony involving the disclosure of confidential communications is inadmissible under the same statute. Matter of Commitment of W.C., 685 So.2d 634
(La.App. 1st Cir. 1996). The exceptions to this general rule are enumerated in Subsection (B)(2) of C.E. Art. 510.
As stated by the court in Commitment of W.C.:
 Statutory privileges should be given a genuine construction. Although privileges serve to foster a relationship . . . they disserve the truth-seeking function of the adversary trial. Therefore, in determining the applicability of a privilege, a court should determine whether the testimony that is claimed to be privileged is in the class whose exclusion will advance the policy sought to be furthered by the privilege. Id. at 165.
Therefore, it is a function of the courts to determine whether a privilege applies pursuant to C.E. Art. 510. The courts have ruled on the issue. It would be outside the scope of this office to conclude otherwise on any determination made by the courts in this matter.
I trust this sufficiently addresses your concerns. If our office may be of further assistance, please do not hesitate to contact us.
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: ___________________________ CARLOS M. FINALET, III Assistant Attorney General
RPI:CMF:glb
Date Received: Date Released:
CARLOS M. FINALET, III Assistant Attorney General