992 So.2d 1067 (2008)
In the Matter of MENTAL HEALTH OF S.A.V.
No. 2008 CA 1013.
Court of Appeal of Louisiana, First Circuit.
June 20, 2008.
*1068 Joseph A. Prokop, Jr., Baton Rouge, LA, for Plaintiff/Appellee, Dr. Sudheera Rachamallu.
Brittany R. Yoes, Baton Rouge, LA, for Defendant/Appellant, S.A.V.
Before CARTER, C.J., WHIPPLE and DOWNING, JJ.
CARTER, C.J.
This appeal concerns the judicial commitment of S.A.V. pursuant to La. R.S. 28:54 of the Mental Health Law. For the reasons that follow, we affirm.

FACTS AND PROCEDURAL HISTORY
On February 11, 2008, S.A.V. was admitted to Our Lady of the Lake Regional Medical Center pursuant to a physician's emergency certificate.[1] The physician's certificate, signed by Dr. G. Broussard, reported that S.A.V., a fifty-nine-year-old *1069 female, was suffering from auditory and visual hallucinations and delusions. Dr. Broussard indicated that S.A.V. was gravely disabled and unable to seek voluntary admission.
Two days later, a representative from the coroner's office, Gerald Heintz, examined S.A.V. and prepared a coroner's emergency certificate.[2] Heintz determined S.A.V. suffered from bipolar disorder. At the time of the coroner's examination, S.A.V. was suffering from audio and visual hallucinations. S.A.V. was paranoid, manic, psychotic, disorganized, irritable, disheveled, actively responding to internal stimuli, and markedly delusional. Heintz indicated that S.A.V. was gravely disabled and unable to seek voluntary admission.
On February 22, 2008, Dr. Sudheera Rachamallu petitioned the court for the judicial commitment of S.A.V.[3] Dr. Rachamallu alleged that S.A.V. suffered from bipolar 1 mania with psychosis that was causing her to be gravely disabled. Attached to the petition were the February 11, 2008, physician's certificate and the February 13, 2008, coroner's certificate.
On February 22, 2008, the district court signed an emergency detention order. The district court appointed Dr. Rachamallu to examine S.A.V. and to make a written report. The district court also arranged for the appointment of counsel to represent S.A.V. and set the matter for a judicial commitment hearing.
Pursuant to the district court's order and in accordance with La. R.S. 28:54 D(1), Dr. Rachamallu filed her physician's report with the court. Dr. Rachamallu examined S.A.V. on March 4, 2008. Dr. Rachamallu observed that S.A.V. was well built, disheveled, exhibited mild psychomotor agitation, had an irritable affect, and delusions. Dr. Rachamallu reported that S.A.V. had no auditory or visual hallucinations and was "oriented except for exact date." According to Dr. Rachamallu's report, S.A.V. suffered from bipolar illness and was noncompliant with her medications, easy to agitate, disrobing in front of her peers, and urinating on herself. Dr. Rachamallu wrote that S.A.V. was paranoid that the staff was trying to kill her, and S.A.V. was cursing and scratching the staff. Dr. Rachamallu concluded with her opinion that "involuntary confinement and treatment are indicated."
During the March 11, 2008, commitment hearing, Dr. Rachamallu was certified as an expert in psychiatry. Dr. Rachamallu's testimony was consistent with her report.[4] She indicated S.A.V. was bipolar I with mild psychotic symptoms and a mixed personality disorder. She stated that S.A.V. has a history of bipolar and mental illness, with multiple hospitalizations, and a history of seizures. S.A.V.'s most recent hospitalization was prompted by S.A.V.'s son finding her bleeding on the floor of the front doorway in a psychotic state. S.A.V. was actively hallucinating and refusing medication, which was necessary to calm her. S.A.V. was urinating on herself, and Dr. Rachamallu indicated that it was "not just from being incontinent." When she was first hospitalized, S.A.V. would fall when getting out of her chair and was refusing to walk; however, during the few days preceding the hearing, S.A.V. was ambulatory with the help of a walker. S.A.V. is currently on four medications (calcium gluconate, Tegretol, Lamictal, and Seroquel) for seizures, bipolar illness, mood stabilization, and antipsychotics.
*1070 Dr. Rachamallu agreed that S.A.V. is capable of feeding herself and of bathing and dressing herself "with many motions." However, Dr. Rachamallu viewed S.A.V. as gravely disabled, unable to survive safely in freedom, unable to protect herself, and unable to provide for her basic needs. In Dr. Rachamallu's opinion, S.A.V. requires placement in a nursing home that can provide a "high level supervised setting for continued treatment."
S.A.V. also testified at the commitment hearing. S.A.V. acknowledged that she had not been taking her medication but explained it was due to a "gap" in her Medicare coverage and a lack of financial resources. She stated that Medicare is now covering the cost of her medicines. S.A.V. manages financially with Medicare and money from her ex-husband, who also pays the mortgage on the home in which she lives. S.A.V. informed the court that she has a neighborhood friend who comes over every day to bring her the paper, work puzzles, and drink coffee.[5] She stated that she and her friend often eat dinner together. S.A.V. testified that she is an epileptic and attributed her earlier hospital inpatient psychiatric treatments to her epilepsy. In response to questioning regarding whether she had past problems with home health care, S.A.V. responded that she did not know what Dr. Rashamallu "was referring to." S.A.V. concluded by stating she wants the freedom to try living at home.
Finding S.A.V. gravely disabled due to mental illness, on March 13, 2008, the district court signed a judgment ordering S.A.V.'s commitment to the Louisiana Department of Health and Hospitals for placement in an appropriate nursing home for a period not to exceed 180 days. S.A.V. appeals, alleging the district court erred in categorizing her as gravely disabled absent clear and convincing evidence, in finding her gravely disabled on the basis of a physical ailment (epilepsy), and in failing to order the least restrictive treatment possible.

DISCUSSION

Grave Disability Due to Mental Illness
To commit an individual under the Mental Health Law, the petitioner must show by clear and convincing evidence that an individual is dangerous to herself or to others or is gravely disabled due to substance abuse or mental illness. La. R.S. 28:55 E(1). The "clear and convincing" evidence burden of proof applicable to a judicial commitment is greater than the "preponderance of the evidence" standard applicable to most civil matters but less onerous than the "beyond a reasonable doubt" standard applicable to criminal matters. See In re L.M.S., 476 So.2d 934, 937 (La.App. 2d Cir.1985). Under the clear and convincing evidence standard, the existence of the disputed fact must be highly probable or much more probable than not. Id.
"Gravely disabled" is the condition of a person who is: (1) unable to provide for her own basic physical needs, such as essential food, clothing, medical care, and shelter, as a result of serious mental illness; and (2) unable to survive safely in freedom or to protect herself from serious harm. See La. R.S. 28:2(10). Both elements of "gravely disabled" must be proven in order to commit an individual under the Mental Health Law. In re J.C., XXXX-XXXX, p. 3 (La.App. 4 Cir. 5/23/01), 790 So.2d 656, 658, writ denied, 2001-2525 (La.12/7/01), 803 So.2d 38. A "mentally ill person" is defined as "any person with a psychiatric disorder which has substantial *1071 adverse effects on [her] ability to function and who requires care and treatment. It does not refer to a person suffering solely from mental retardation, epilepsy, alcoholism, or drug abuse." La. R.S. 28:2(14).
Whether a person is mentally ill or gravely disabled and unable to survive safely in freedom are factual determinations to be made by the trial court, and these findings will not be disturbed on appeal in the absence of manifest error. Commitment of W.C., 96-0777, pp. 7-8 (La.App. 1 Cir. 12/20/96), 685 So.2d 634, 638-639. Although, the factual findings of the trial court in commitment cases are entitled to great weight, the record must be reviewed in light of the heightened burden of proof required by constitutional and statutory law since the judgment of the trial court involves the deprivation of liberty by involuntary commitment. Id., 96-0777 at p. 8, 685 So.2d at 639.
The irrefutable medical evidence establishes that S.A.V. suffers from a serious mental illness: bipolar disorder. S.A.V. has been hospitalized multiple times for her mental illness, including this latest incident. In deciding whether S.A.V. is able to provide for her own basic physical needs and to survive safely in freedom, the district court had the benefit of Dr. Rachamallu's expert testimony, as well as the opportunity to observe the demeanor and evaluate the testimony of S.A.V. Although S.A.V. is capable of feeding, bathing, and dressing herself, she is appearing undressed in public, urinating on herself, and on occasion refusing to walk. She has a history of falling. Recently, S.A.V. was experiencing both audio and visual hallucinations. S.A.V. is delusional and suffering from paranoia. S.A.V. attributes her health problems solely to epilepsy rather than acknowledging her serious mental illness. When living on her own, S.A.V. has not taken her medication and not cooperated with home health care. Dr. Rachamallu testified that S.A.V. has no one locally to monitor her activities and her medication. Dr. Rachamallu noted that although S.A.V. had improved during this recent hospitalization due to compliance with her medications, she was concerned that allowing S.A.V. to return home would be detrimental to her well-being.
The petitioner presented clear and convincing evidence to establish that S.A.V. is mentally ill and unable to provide for her basic needs and to survive safely in freedom or protect herself from harm. We find no error in the district court's judgment ordering S.A.V. committed due to grave disability as a result of mental illness.

Least Restrictive Treatment
Under the Mental Health Law, if the trial court finds by clear and convincing evidence that the respondent is gravely disabled as a result of mental illness, the court shall render a judgment for her commitment. La. R.S. 28:55 E(1). "After considering all relevant circumstances, including any preference of the respondent or [her] family, the court shall determine whether the respondent should be committed to a treatment facility which is medically suitable and least restrictive of the respondent's liberty." Id. "Treatment facility" means any facility licensed by the state in which any mentally ill person is received or detained as a patient. La. R.S. 28:2(29)(a). When selecting a non-forensic treatment facility, a trial court should first consider medical suitability; second, least restriction of the person's liberty; third, nearness to the patient's usual residence; and fourth, financial or other status of the patient. Id. Public and private nursing homes are recognized treatment facilities. La. R.S. 28:2(29)(a)(iv).
Noting that during the last five days preceding the commitment hearing, S.A.V. *1072 had been more compliant with her medications, Dr. Rachamallu did not think continued in-patient treatment remained necessary. However, she recommended S.A.V. be placed in a nursing home facility for six months, where she could receive the "high level care" she needs. Dr. Rachamallu testified that a nursing home placement had been secured.
S.A.V. maintains she should be allowed to receive all necessary services on an out-patient basis. However, in Dr. Rachamallu's opinion, the use of less restrictive home health care assistance would be detrimental to S.A.V.'s well being. S.A.V. has a history of falling and of not taking her medication. S.A.V.'s son does not live here, and she has no family support in town to monitor her activities and medications.[6] S.A.V. has not done well with home health care in the past, as she has refused to cooperate and to accept treatment.
The record clearly supports the trial court's placement of S.A.V. in a nursing home as the least restrictive, medically suitable facility.

CONCLUSION
The medical evidence clearly establishes that S.A.V. suffers from serious mental illness that causes her to be gravely disabled. By ordering S.A.V. placed in the care of a skilled nursing home, the trial court chose the least restrictive option that would provide S.A.V. with the care she requires. For the above reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to S.A.V.
AFFIRMED.
NOTES
[1] See La. R.S. 28:53 B(1).
[2] See La. R.S. 28:53 G(2).
[3] See La. R.S. 28:53 H.
[4] The physician's report was offered and accepted into evidence at the March 11, 2008, hearing.
[5] S.A.V.'s friend was not named and did not testify.
[6] The physician's and coroner's certificates indicate S.A.V.'s son lives in Texas.